## Brozier Smith v. The State.

No. 2764. Decided January 27, 1904.

**1.—Jury Law—Discrimination Not Shown.**

In a county having about 8000 white voters and about 1000 negro voters, where it appears that there were practically no negroes who were qualified to sit on the grand jury, and at most but three or four, and that the jury commissioners did not discriminate against the negro race in selecting grand jurors, there was no error in the refusal of the court to quash the indictment because of discrimination against the negro race.

**2.—Charge of the Court—Malice—Murder in First Degree.**

Where the court charged both on murder in the first and second degree and defined express and implied malice, it is not reversible error to charge in the same paragraph and in connection with the above that in murder in the first degree malice must be shown by the evidence to have existed to the satisfaction of the jury beyond a reasonable doubt, while in murder in the second degree, malice would be implied from the fact of an unlawful killing.

**3.—Same—Murder in the Second Degree.**

It is not error to charge that if the jury have a reasonable doubt of defendant being guilty of murder in the first degree they should acquit him of that offense, and next proceed to inquire whether he is guilty of murder in the second degree, when in the charge submitting murder in the second degree they are also instructed that in case of a reasonable doubt thy should acquit him.

**4.—Same—Manslaughter.**

See opinion for facts therein stated which preclude the theory of manslaughter.

**5.—Same—Exception Too Late.**

No criticism of the court's charge will be entertained unless the point was made either during trial or on motion for new trial in the court below.

**6.—Bills of Exception—Filed Too Late.**

Where it appears that the term of court adjourned on the 2d day of May, 1903, and the bills were presented to the clerk on the 11th day of that month and filed next day, they can not be considered and they were correctly omitted from the transcript.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of murder in the first degree; death penalty assessed.

The opinion states the case.

*Tom P. Whipple,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, and his punishment assessed at death. Motion was made to quash the indictment because of discrimination against the negro race, he being a negro. While the evidence shows there had been but two negroes summoned or served upon the jury for a number of years, yet the testimony does not show discrimination against that race. The facts show that there were perhaps 1000 negro voters in Ellis county, and about 8000 white voters in the county. Yet these witnesses further testify that they knew practically no negroes who were qualified to sit on the grand jury; none of them placing the number larger than three or four. The commissioners testify that they did not discriminate in selecting grand jurors; in fact did not take into consideration whether jurors were negroes or white men. We do not believe there was any error in the refusal of the court to quash the indictment. Hubbell v. State, 67 S. W. Rep., 413; Parker v. State, 65 S. W. Rep., 1066; Martin v. State, 72 S. W. Rep., 386.

This excerpt of the charge is criticised: "That in murder in the first degree malice must be shown by the evidence to have existed, to the satisfaction of the jury, beyond a reasonable doubt, while in murder in the second degree malice would be implied from the fact of an unlawful killing." The whole paragraph taken together is as follows: "The next lower grade of culpable homicide than murder in the first degree is murder of the second degree. Malice is also a necessary ingredient of the offense of murder in the second degree; the distinguishing feature, however, so far as the element of malice is concerned is, that in murder in the first degree malice must be proved to the satisfaction of the jury beyond a reasonable doubt as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing." Then follows the definition of implied malice, which is correct; the court having previously defined malice in its general sense as well as express malice. We do not believe there is any error and the criticism is hypercritical. The charge, taken together with the definitions of malice and the two degrees of murder and the necessary existence of malice in the two degrees, is clearly and fully defined by the court.

This excerpt of the charge is also criticised: "If the jury have a reasonable doubt of defendant being guilty of murder in the first degree they should acquit him of that offense, and next proceed to inquire whether he is guilty of murder in the second degree." This is citicised because it precludes the idea of an acquittal, and requires the jury to consider as to the lower grade, although they may have believed defendant not guilty of any offense. This charge is not subject to this criticism. It simply informed them, if they believed him not guilty of murder in the first degree, they then may inquire whether he is guilty of murder in the second degree. This does not assume any fact against defendant, nor does it so inform the jury. After submitting murder in the second degree they are informed if they do not believe beyond a rea-

sonable doubt that he is guilty of murder in the second degree, they should acquit him.

It is contended further that the law of manslaughter should have been given in the charge to the jury. There is no evidence in the record in the remotest degree suggesting this issue. The evidence shows that appellant had been harsh and cruel to his wife and quarreled with her and mistreated her. On the night of the homicide he went to her room, about 11 o'clock, and some words passed between them, as heard by witnesses near by, but these are not stated, except that deceased said, "If you are going to kill me, why shoot me;" and he immediately fired three shots into her body, killing her instantly. He had threatened to take her life. She had been in her room but a few moments when the tragedy occurred, and her prostrate body was found in a partially undressed condition preparatory to her retirement for the night. He went to town and in a saloon told of the tragedy, and was arrested. We believe the evidence was sufficient to justify the verdict of the jury. The judgment is affirmed.

*Affirmed.*

### ON MOTION TO COMPLETE RECORD.

HENDERSON, JUDGE.—The appellant has filed a motion to complete the record as to certain bills of exception. It is made to appear that the term of the court adjourned on the 2d day of May, 1903. The bills were presented to the clerk for filing on May 11, 1903, but were not filed until May 12. This being after the adjournment of the term of court at which the conviction was had, the bills of exception can not be considered, and the action of the clerk below was correct in omitting them from the transcript. The motion is accordingly overruled.

*Motion overruled.*

### ON REHEARING.

### February 17, 1904.

DAVIDSON, PRESIDING JUDGE.—At a former day of the term the judgment was affirmed. Appellant criticises the court on motion for rehearing because we did not pass upon this excerpt from the charge: "Or do the facts and circumstances in the case show such a general disregard of human life as necessarily includes the formed designed against the life of the person slain." There was no exception taken to this clause of the charge, either during the trial or on motion for new trial; and under the unbroken line of decision since Johnson v. State, 42 Texas Crim. Rep., 87, this question can not be reviewed on appeal. No criticism of the charge will be entertained in this court unless the point was made either during the trial or on motion for new trial in the trial court. This excerpt mentioned by counsel in motion for rehearing was not criticised in any manner in the trial court, and was presented for the first

time in his brief on appeal. This is a sufficient answer to this ground of the motion for rehearing.

It is contended we were in error in holding the evidence sufficient to justify the conviction of murder in the first degree. We have carefully reviewed the evidence and are thoroughly satisfied it is sufficient. The court in the original opinion uses this expression: "On the night of the homicide he (meaning defendant) went to her room (meaning his wife's room) about 11 o'clock, and some words passed between them as heard by witnesses near by, but these are not stated," etc. The criticism is that the evidence does not state that appellant went to his wife's room about 11 o'clock. The evidence does not expressly so state. This was a conclusion of the court from the testimony of the witnesses. The facts show that on the night of the homicide the deceased, with some friends, went to the theater, and passed near the defendant en route. His wife informed him as to her destination, and he said "All right." Later on, defendant was seen in the opera house by some of the witnesses. When he left the opera house it not shown. Nor is it shown at what time he reached the opera house. Nor is it shown at what time he reached the house occupied by his wife. Nor is it definitely shown that he did or did not reside with his wife at the time. The witness Kemble says that about September, 1902, "I had to reprimand defendant for mistreating deceased, for running her out into the street and stamping her. I ordered him to stay away from my premises. I saw him there no more for some time. Later I would see him back there but heard no more violence. Sarah (deceased) was always kind and considerate to him, and seemed to try to please him. He was cross and harsh to her and seldom gave her a kind word." It is an inference rather from the facts that he passed in and out of the servants' house at Kemble's, where she was working; and he may or may not have resided there with her; but we take it that it makes no difference, and the criticism practically has no merit in it. It is certain if the witnesses tell the truth that he and his wife were attending the opera house that night; it is certain that deceased reached her little cabin about 11 o'clock or a little later; it is not certain from the facts at what time defendant reached the cabin. He may have preceded her, or he may have gotten there about the same time, or he may have gone into the cabin after she did. But we do not see what important bearing this could have upon the case, and how the fact that he may or may not have reached the cabin exactly at 11 o'clock or thereabouts would have any effect in granting a rehearing. It is certain that he was there; and it is certain that he killed his wife, and whether he preceded her a short time or whether he got there at 11 o'clock, we take it, is immaterial. The motion for rehearing is overruled.

*Motion overruled.*