## Lige Renow v. The State.

### No. 3539.   Decided February 7, 1906.

**1.—Murder in Second Degree—Provoking Difficulty—Charge of Court.**

Where on a trial for murder the evidence failed to show any language or conduct on the part of the defendant or his companion which was intended by them or calculated to provoke an attack by the deceased or his companion, and that the transaction was a casual difficulty a charge on provoking the difficulty was unauthorized.

**2.—Same—Abandonment of Difficulty—Good Faith—Charge of Court.**

Where upon a trial for murder the evidence showed the difficulty to have been a continuous transaction, and did not show that defendant engaged in the difficulty and subsequently abandoned it, there was error to charge on abandonment of the difficulty, and especially that defendant should abandon the same in good faith before he would be entitled to right of self-defense. Following Thornton v. State, 65 S. W. Rep., 1105.

**3.—Same—Manslaughter—Adequate Cause—Statute.**

Where the adequate cause is of a statutory character the attention of the jury should be directly called to this in the charge of the court, and where the evidence showed in a trial for murder that defendant was struck by deceased either by a rock or a stick, the court should have called the attention of the jury to the statutory adequate cause.

Appeal from the District Court of Denton.   Tried below before Hon. D. E. Barrett.

Appeal from a conviction of murder in the second degree; penalty, thirteen years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Sullivan* and *Emory C. Smith,* for appellant.—On question of abandonment of difficulty, Thornton v. State, 65 S. W. Rep., 1105; Wimberly v. State, 22 Texas Crim. App., 506; Irvine v. State, 20 id., 12; Lee v. State, 72 S. W. Rep., 195.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—This conviction is for murder in the second degree, with thirteen years in the penitentiary fixed as the punishment; hence this appeal.

The charge on provoking the difficulty is extensively criticised.   There is no direct challenge of it on the ground that the testimony was not sufficient to raise the question of provoking the difficulty.   However, we believe that the exceptions numerously raised to said charge, involve this question incidentally or indirectly, and especially as the case is to be reversed, we will discuss the legality of said charge in the face of the testimony as disclosed by this record.   We would remark here that the question, as to when a court is authorized to charge on provoking the difficulty, has been so often and so thoroughly discussed that we only deem it necessary to refer to some of the decisions as to the

propriety or authority of the court to give a charge on that subject. A court is only authorized to charge on provoking the difficulty, when it is able to lay its hand upon some fact or facts testified to by a witness or witnesses, which shows or tends to show that defendant, before or at the time of the difficulty, did some act or used some language, or both, calculated to provoke a difficulty, under the circumstances and with the intent to provoke such difficulty; and that on the use of such language or conduct or both, he was attacked or assaulted by the prosecutor, and then having thus produced the occasion, he in turn assaulted and killed deceased. In such case his right of self-defense is cut off. Cartwright v. State, 14 Texas Crim. App., 486; Abrams v. State, 36 Texas Crim. Rep., 44; Bearden v. State, 79 S. W. Rep., 37; Dent v. State, 79 S. W. Rep., 525. And see McCandless v. State, 42 Texas Crim. App., 58, where this question is thoroughly discussed in the light of the authorities, and the character of charge which should be given, is outlined. Is there in the record as here presented sufficient testimony to have authorized the court to give a charge on provoking the difficulty? It is not necessary here to discuss the testimony of the defense on this subject, except to remark that said testimony negatives the idea that appellant or his brother, Mose, provoked the difficulty. If there is any such testimony it must come from the State's witnesses. These in effect show that Mose Renow, appellant's brother, who was also present and a party to the difficulty, came to the house where deceased lived, early in the morning about daylight. His mission was to get his horse, which Dolphus Isom was breaking. The testimony of the State is not clear as to whether appellant came there with Mose, but would rather indicate that he came afterwards. The defendant's testimony makes it clear that he did not come with Mose, but after he did. Mose came the evening before to get his horse from Dolphus, who had him for two or three weeks to break. Dolphus declined to give the horse up at that time, stating he had just gotten him so he could ride him, and he would not surrender the animal unless he got $2.50. Mose came early the next morning, before the Isoms got up, went into the lot and got the horse, put a hitch-rein or halter on the horse and led him out of the lot. He was discovered by the Isoms about this time, and they came out, and in the altercation over the possession of the animal, the animal broke loose and ran back to the lot gate, and the Isoms opened the gate and let him in. About this time, as we gather, appellant (Lige Renow) came up, and said to Mose if he (Mose) would stick to him they would take the horse. Mose made no reply. An altercation ensued about the possession of the animal, in which the parties cursed each other. Lige was told that he must not curse there, and he remarked that he would curse anywhere. On request, Dolphus Isom gave Mose his halter, and the Renows appear to have started towards their home, around the horse and cow lot. Shack Isom followed appellant, who was ahead, and Mose and Dolphus came on afterwards, and also Mrs. Isom following. It appears that when they

got near to the corner of the cow lot, Shack said he believed appellant had a pistol, and proposed to search him. Dolphus came up, held his hands, and Shack searched appellant, feeling of his pockets, and stated he did not have a gun on him. They turned appellant loose, and he backed off, opening his knife and said, they could not do that again; and further said, "Come on down here, and we will settle it." After he opened the knife, Shack picked up a stick, about three feet long and an inch or two in diameter (used to keep the calves off when milking) and followed, evidently gaining on appellant, who finally turned around facing Shack, who at this juncture struck him with the stick. According to the testimony appellant then fired at Shack, hitting him; and then shot deceased (Dolphus), inflicting a mortal wound on him. The State's testimony shows by Shack Isom that appellant picked up the pistol from the ground. Appellant's testimony shows that he had the pistol on all the time while the search was being made, but it was in the waist-band of his pants and not in his pockets, and that he got it out of his pants, and did not take it up from the ground. Appellant's testimony also shows in this connection that he was on his way home, going away from the parties at the time, and they were pursuing him; that they caught him first and searched him; that he backed off from them, opened his knife, and told them they could not do that any more; that he then started on his way home; that Shack picked up a stick and struck him with it, and that Dolphus threw rocks at him; that he drew his pistol, wheeled and shot Shack first, and Dolphus at that time struck him with a rock and he turned and shot him. It may be also stated in this connection that appellant accounts for his presence there, as follows: that he did not know anything about his brother Mose's difficulty in regard to procuring possession of his horse on the evening before; that he was fixing to get the mules up early the next morning to thresh wheat, and went down in the pasture (which seemed to be a joint pasture used by both the Renows and Isoms and which surrounded their lot); that in looking for the mules he came up to the lot about the time of the difficulty in regard to the possession of the horse. This is substantially all the testimony, as we gather from the record that bears at all upon the question of provoking the difficulty.

Evidently Mose Renow's object in going there early in the morning was to get his horse before the Isoms got up. They discovered him, came out, interfered, and succeeded in taking the mare from him, and turned the animal back into the lot. About this time Lige Renow came up, and he participated in the altercation that was in progress between Mose and the Isoms. Of course, it is suggested that Lige must have come up in connection with an understanding with Mose to assist in getting the mare. However, he denies this, as does Mose.

The question is, was anything said or done with the intention on their part and calculated to provoke a difficulty? The record shows that the Renows, as well as the Isoms, cursed and swore; that Lige remarked,

if Mose would stick to him they would take the mare. Still they did not take the mare, nor make any effort to do so. There was no difficulty at the gate. They retired towards their home. The Isoms followed. They say that after they took hold of appellant and searched him for a pistol he drew his knife, and told them if they would come on down there, they would settle it. We fail to see in this connection any right on the part of the Isoms to assault appellant and search him for a pistol. There does not appear to be anything said or done by him at that time to have superinduced this action on their part. Still he submitted to it. When turned loose, appellant retreated, drew his knife, and remarked, "if they would come down there, they would settle it," according to the testimony of the Isoms. We could hardly regard this as manifesting an intention of provoking a difficulty, while it might be considered an invitation to a mutual combat. The parties still followed him, and according to all the testimony, when he was going away, they overtook him, and Shack assaulted him with a stick. Appellant then drew his pistol, or according to the testimony of the Isoms, picked it up from the ground, and began firing. We fail to see from this testimony any such language or conduct on the part of appellant or of his brother, Mose, which, in our view, was intended by them or calculated to provoke the Isoms to attack him. The most that can be said is that it was a casual difficulty, arising over the possession of a mare; and we do not believe the court was authorized to give a charge on provoking the difficulty.

It is also objected that the court improperly instructed the jury with regard to an abandonment of the difficulty on the part of appellant, after he had provoked the same. In the absence of provocation, there could be no abandonment of a difficulty provoked by appellant. But, was there any difficulty in which appellant and his brother (Mose) originally engaged and subsequently abandoned? We hold there was not. The first difficulty which occurred between the parties was the assault made by the Isoms on appellant and his being searched by them for a pistol. We do not find anything in the testimony to have authorized this conduct on the part of the Isoms. Appellant is not shown to have engaged in a difficulty with them at this time, but as soon as he was released, backed off from them, opened his knife, retreated a little distance, they pursuing, and in a very short time they again assaulted him, when the shooting began. From this record, this appears to have been a continuous transaction. The second assault with the stick followed immediately upon the heels of the search made for the pistol. We do not believe there is testimony in this record showing that appllant engaged in the difficulty, which he subsequently abandoned. However, the objection made and urged is to the effect, even if it be conceded there was an abandonment of the difficulty, that the court required that appellant should abandon the same in good faith, before he could be entitled to the right of self-defense. The charge of the court involves this question of good faith, and is directly in contravention of

the opinion of this court in Thornton v. State, 65 S. W. Rep., 1105. The court there discussed a similar charge, and held: "That it is immaterial whether appellant abandoned the difficulty in good faith or not. The question is, did he in fact abandon the difficulty? If he abandoned it, it must have been necessarily in good faith, so far as the appellant was concerned, and it would make no difference whether he intended subsequently to renew the difficulty or not."

We do not understand that any criticism is made of the court's charge on manslaughter. The court gave a general charge on this subject. Without referring to the particular fact which very likely operated on the court's mind in giving the charge on this subject, to wit: the fact that prior to the shooting by appellant, he was assaulted and searched for the pistol by deceased and his brother, and he was subsequently assaulted and struck by deceased—according to appellant's testimony, with a rock, and by the State's testimony, with a stick by Shack Isom. The statute makes an assault causing pain or bloodshed adequate cause; and we have held that where the adequate cause is of a statutory character, the attention of the jury should be directly called to this in the charge of the court. If on a subsequent trial, the testimony is the same, the judge should call the attention of the jury to the statutory adequate cause.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*