EDGAR BARTON v. THE STATE.

No. 3751. Decided May 6, 1908.

**1.—Murder—Charge of Court.**

Where upon trial for murder the court in his charge withdrew the issue of murder in the first degree from the jury, and in explanation of his definition of malice aforethought instructed them that this was only given for a correct understanding of murder in the second degree, there was no error.

**2.—Same—Charge of Court—Principals.**

Where upon trial for murder the court correctly defined in his charge the law of principals, the contention of defendant that the charge assumed that others were present and knew the unlawful intent of those engaged in the difficulty, was untenable, as the evidence supported the charge.

**3.—Same—Charge of Court—Murder in Second Degree—Implied Malice.**

See opinion of court for correct charge on murder in the second degree when considered together with other portions of the charge, and which is not on weight of the evidence.

**4.—Same—Adequate Cause—Manslaughter.**

Upon trial for murder, where the court's charge, taken in connection with other portions of the charge, gave the defendant the benefit of the doctrine of manslaughter with reference to his own mental state and that of his codefendant who did the actual killing, and did not do more than pertinently present to the jury the issue of manslaughter raised by the evidence, the same was not on weight of evidence.

**5.—Same—Special Charges Refused—Practice in District Court.**

Where upon trial for murder, defendant's counsel, after the jury had retired to consider their verdict, requested the court to recall the jury to submit special charges which he had prepared; and it did not appear on the record on appeal that any exception was made to the court's charge that it did not correctly submit the issues raised in the special charges, or that time was requested before the jury retired to prepare such special charges, there was no error in the court's refusal to recall the jury for this purpose; besides the court's charge sufficiently presented the issue involved.

**6.—Same—Sufficiency of the Evidence.**

Where upon trial for murder the evidence supported a verdict of murder in the second degree, the same will not be disturbed.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Preston Martin,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Parker County for the murder of one Will Burrow, alleged to have been committed on the 5th day of July, 1906. The evidence showed that on this day one Charley Lankford at a picnic or celebration near the City of Weatherford, stabbed and killed Burrow with a knife in a controversy with respect to a woman of ill-fame and that appellant was present and engaged in the controversy. On trial appellant was convicted of murder in the second degree and his punishment assessed at five years confinement in the penitentiary. From this prosecution he appeals and relies mainly, for reversal upon supposed errors in the charge of the court. The court in submitting the case to the jury, in express terms told them that appellant was not guilty and that he could not be convicted of murder in the first degree, but submitted to them the issues of murder in the second degree and manslaughter.

1. The first complaint made by appellant is that the court erred in the second and third paragraphs of his charge to the jury in respect to murder in the first degree. These paragraphs are as follows: (2). "All murder committed with express malice is murder of the first degree and all murder not of the first degree is murder of the second degree." (3). "While the indictment charges murder in the first degree the evidence will not sustain a conviction for that offense and you will not be charged upon murder in the first degree except the court will define express malice in order that you may understand the definition of murder in the second degree." It is contended by appellant that these charges taken together tell the jury that the defendant is not guilty of murder in the first degree but strongly indicate to the jury that the defendant is guilty of murder in the second degree, and that these charges, coming from the court, were calculated to influence and mislead the jury, and evidently did mislead them as indicated by their verdict. We are at some loss to see what objection could be made to the charges of the court above quoted. In so far as they withdrew the issue of murder of the first degree from the consideration of the jury, they were, of course, favorable to appellant and the explanation of the court that his definition of malice aforethought and the fact that he charged on murder in the first degree at all, was solely and only for the purpose of enabling them to correctly understand the definition of murder in the second degree, was not erroneous but entirely proper and to be commended.

2. Again, complaint is made of the 5th paragraph of the court's charge. This paragraph is as follows: "All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts of encourage by words or gesture, those actually engaged in the commission of the unlawful act; such persons so acting or encouraging are principals." The vice in this charge, as claimed, is that it assumes to the jury that others were present and knew the unlawful intent of those

engaged in the difficulty. As stated above, the actual killing was done by one Lankford. Appellant was present and if the testimony of the State is to be believed was directly aiding and encouraging Lankford by expressions of, "Kill him," or "Wait until I get my pistol and I'll fix him"; by blows with a buggy whip and otherwise. The charge did not assume any fact to be true but correctly defined what in law is meant by a principal, in order that in the light of the subsequent portions of the court's charge, applying the law to the facts, the jury might intelligently determine and fairly declare whether in terms of the law, appellant was or not a principal.

3. Again, appellant complains of the 6th paragraph of the court's charge to the jury. In order to be well understood it is necessary to consider in connection with the 6th paragraph of the court's charge, the paragraph succeeding. The two are as follows:

"6. The next lower grade of culpable homicide than murder in the first degree is murder of the second degree. Malice is also a necessary ingredient of the offense of murder in the second degree, the distinguishing feature, however, so far as the element of malice is concerned, is: that in murder in the first degree, malice must be proved to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"7. Implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree, than if the killing is shown to be unlawful, and there is nothing in evidence on the one hand showing express malice, and on the other hand there is nothing in evidence that will reduce the killing below the grade of murder, then the law implies malice and the homicide is murder in the second degree." The objection urged to the sixth paragraph of the court's charge, quoted above, is that in the said paragraph it is assumed that there was an unlawful killing and that the jury following up the court's assumption that there was an unlawful killing, concludes that malice is therefore implied and that it does not have to be proved to the satisfaction of the jury beyond a reasonable doubt. We think, considering both of these paragraphs together, that this criticism is not sustained but that on the other hand the court's charge in respect to murder in the second degree admirably presents the law on that subject.

4. Again, complaint is made of the 12th paragraph of the court's charge. That paragraph is as follows: (12) "Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation (if any) to consider in connection therewith all the facts and circumstances in evidence in the case, and if you find that,

by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the mind of said Lankford, at the time of the alleged killing, and the adequacy of cause (if any) producing such condition." This charge of the court, especially, taken in connection with the succeeding paragraphs, gives the appellant the benefit of the doctrine of manslaughter with reference to his own mental state and that of Lankford, who did the actual act of killing. .It does not assume, as seems to be contended by appellant, that he was at the very moment of the killing engaged in some kind of fight or difficulty with the deceased, or do more than pertinently present to the jury the issue of manslaughter raised by the evidence.

5. The only two remaining grounds to be considered, are, that the court erred in refusing to give in charge to the jury, the following special instruction requested by counsel for appellant:

"Gentlemen of the jury, at the request of the defendant, you are instructed that if you believe from the evidence that Charley Lankford, cut and stabbed the deceased, Will Burrow, with a knife at a time when the defendant, Lankford, and said Burrow were engaged in a fight with their hands or fists and that the said Lankford, cut the said Burrow unbeknowing to the defendant, or if you have a reasonable doubt in your minds as to whether the defendant knew that the said Charley Lankford was using his knife on said Burrow, while then engaged in a fight or difficulty if you so believe, you will give the defendant the benefit of such doubt and find defendant not guilty." In indorsing his action on this requested instruction, the court makes the following explanation: "This charge was not presented or called to my attention until about five minutes after the jury had received the charge of the court and retired to their room for deliberation, and said charge refused."

It appears from the bill of exceptions, however, that after the refusal of this special instruction, counsel for appellant requested that the jury be recalled by the court and said requested charge be given to them; that but a short time had elapsed and that counsel for the defendant stated to the court that he would have prepared said special charge and presented it to the court before the jury retired to consider of their verdict had he not believed the court would have charged on this issue favorably to the appellant. It appears from a bill of exceptions that the jury retired on May 3, 1907, and deliberated several hours over the case during the afternoon and night of said day and that they did not return a verdict into court until 11 o'clock a. m. on the morning of May 4, 1907, and that about 8 o'clock on the last named morning and some hours prior to the time the jury returned a verdict and before they had completed their deliberations, counsel for appellant again

presented his special instruction and requested the court to recall the jury and give same, all of which was refused by the court. Article 717, of our Code of Criminal Procedure, is as follows: "After or before the charge of the court to the jury, the counsel on both sides may present written instructions and ask that they be given to the jury. The court shall either give or refuse these charges, with or without modification, and certify thereto; and when the court shall modify a charge it shall be done in writing and in such manner as to clearly show what the modification is." Prior to 1879 it had been held in this State that it was error in a felony case for the district judge, after the jury had retired to alter his charge without the consent of the defendant and for such error alone a case would be reversed. Goss v. State, 40 Texas, 520; Taylor v. State, 42 Texas 504; Granger v. State, 11 Texas Crim. App., 454; Garza v. State, 3 Texas Crim. App., 286. Under our present code, however, a more liberal rule seems to prevail. In the case of Benevides v. State, 31 Texas Crim. Rep., 173, the appellant, after the court had read his charge to the jury, excepted to said charge and asked additional instructions which were at the time refused. It appears, however, that some thirty minutes or more after the jury had retired to consider of their verdict, the court of his own motion had the jury recalled into the jury-box and submitted to them an additional charge on the subject of circumstantial evidence over the objection of the defendant. In passing on this objection, the court say: "If the court could not recall and properly instruct the jury when his attention was called to the defects pointed out by the exception, we would have the strange condition of a fatal error being pointed out by the exception, and yet the court legally helpless to cure the evil or remedy the wrong; and we would be confronted with the stranger proposition still, that a party, after excepting to an erroneous instruction, would be heard to successfully complain that the error of which he complained was cured by proper instructions, and by this means his legal rights secured to him. We entertain no doubt as to the correctness of the action of the court in this matter." As we understand, the effect of this decision is to hold that where additional instructions, after the retirement of the jury, are given by the court out of deference or in obedience to objections made by appellant's counsel and in line with such suggestion and to cure omissions in the charge given, that in such case appellant will not be heard to complain. We have not been pointed to any decision, nor are we aware of any, which bears directly on the question of the right of an appellant to demand that additional instructions be given to the jury after their retirement. If such right exists in any case, we doubt if it should be upheld in the case at bar. There must in every case come a time when the matter and question of charge to the jury is settled. In this case no reason is given why, if the instruction requested was desired, the court was not earlier invited to give same. It does not appear from the record that when the court's charge to the jury was read that any exception was made to same on the ground that

it did not correctly apply the principle or submit the issue raised in the special charge, nor was time requested before the jury retired within which to prepare and have submitted a proper instruction, but on the other hand, we are presented with the question of whether, after the retirement of the jury, counsel for appellant have, without excuse for not earlier calling the attention of the court to the matter, the right to demand that the jury be recalled and additional instructions given them. We think this policy should rarely if at all be pursued. Any instruction coming at this stage of the proceeding would seem perhaps to have a special signification and might, and probably would have, a different effect than if submitted in connection with the court's general charge. While we would not, as here presented, be understood as finally laying down a settled rule, we content ourselves with deciding that as presented here it was not the right of appellant to demand and require the submission of a special charge under the circumstances of this case. Nor do we believe that if requested timely that the case should be reversed for the failure of the court to give this special instruction. We think that the charge of the court sufficiently presented this issue. In the 9th paragraph of the charge, the court instructs the jury as follows: "If you believe from the evidence, beyond a reasonable doubt, that the said Charley Lankford with a knife and if said knife was a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against an unlawful attack, reasonably producing rational fear or expectation of death or serious bodily injury, with the intent to kill, did in Parker County, Texas, about the time charged with said knife cut and thereby kill the said Will Burrow as charged in the indictment, and if you further believe from the evidence beyond a reasonable doubt that the defendant was present and *knew* the unlawful intent of the said Charley Lankford, aided the said Lankford by acts or encouraged him by words to commit the offense committed, you will find the defendant guilty of murder in the second degree and so say in your verdict and assess his punishment at confinement in the penitentiary for any time you may determine provided it be for not less than five years." By this charge the jury were in express terms required to believe from the evidence beyond a reasonable doubt that the defendant was present and knew the unlawful intent of Lankford and that he aided and encouraged him to commit the offense. We cannot conceive that the jury could have failed to understand from this charge that they must, before they could find appellant guilty of murder in the second degree, believe beyond a reasonable doubt that at the very time of the killing, appellant knew the unlawful intent of Lankford and having such knowledge, aided and encouraged him.

6. Complaint is made, again, that the verdict is unsupported by the evidence. We do not think so. There is much evidence in the record which we believe would support the verdict of murder in the second

degree and which would suggest a much more severe penalty than five years confinement in the penitentiary. We believe, judging from the entire record, that appellant has had a fair and impartial trial. The charge of the court taken altogether is a model of excellence and the facts and the testimony as contained in the statement of facts fully support the verdict of the jury. Finding no error in the record, the judgment of the court below is affirmed.

*Affirmed.*