HENRY KELLY V. STATE.

No. 1619.   Decided October 16, 1912.

Rehearing denied November 27, 1912.

**1.—Murder—Bills of Exception—Bystanders.**

Where the bills of exception were not full enough and the Court prepared and filed bills of exception of his own, and defendant did not resort to bills by bystanders, the bills prepared by the court will be considered on appeal.

**2.—Same—Evidence—Motive.**

Where, upon trial for murder, the difficulty partly grew out of an election in which defendant was defeated, and that shortly thereafter he approached

the deceased and the difficulty resulted in which the homicide was committed, there was no error in introducing testimony as to what the sheriff had said in regard to the result of the election while defendant was near enough to hear.

### 3.—Same—Evidence—Bullet—Position of Deceased.

Where, upon trial of murder, the position of deceased at the time he was shot was a contested issue, the finding of the bullet which fitted defendant's pistol, in the blood on the ground where the killing occurred, was legitimate testimony.

### 4.—Same—Evidence—Animus of Defendant.

Upon trial of murder, there was no error to admit testimony that the witness had been arrested by defendant at a given time charged with theft of cattle and that defendant told him if he would tell on deceased, defendant would turn him loose; the evidence further showing that defendant at that time insisted on prosecuting deceased for cattle theft.

### 5.—Same—Evidence—Expert Testimony.

Where defendant contended that a physician attended to the wound on his face which was inflicted by the deceased just prior to the time defendant shot him, there was no error in permitting said physician as an expert to testify as whether blood would appear on the face of the defendant after his struggle with deceased and firing the shot which killed him, and that blood would have flowed on defendant's clothes if he had been cut in said struggle, which witness answered in the affirmative; the State contending that defendant was not cut by deceased at the time.

### 6.—Same—Application for Continuance—Conduct of State's Counsel.

Where defendant had filed an application for continuance on account of the absence of certain witnesses, there was no error in permitting State's counsel to prove the presence of these witnesses and that they were attending court, the defense having failed to use them.

### 7.—Same—Evidence—Contradicting Witness.

Where one of defendant's witnesses on cross-examination denied that he knew what was in the application for change of venue made by defendant, there was no error to permit the State to show that in witness' affidavit to said application he swore that he had been fully informed of its contents, had read the same and that the facts therein were true.

### 8.—Same—Evidence—Hearsay.

Where the party who had made a statement as to seeing certain cattle in his pasture was living and within reach of the process of the court, such statements were hearsay and inadmissible.

### 9.—Same—Evidence—Credibility of Witness.

Where, upon trial of murder, the difficulty had partly grown out of declarations by defendant that the deceased had stolen certain cattle, and one of defendant's witnesses testified that deceased had admitted to him that he had stolen cattle and his efforts to suppress the fact, there was no error in permitting the State to show that said witness was a member of the grand jury that investigated such cattle theft and had not called the attention of the grand jury to the alleged confession of deceased.

### 10.—Same—Evidence—Facts Drawn Out by Defendant.

Where, upon trial of murder, the defendant by his own testimony showed that he was an ex-convict, and in extenuation claimed that while he was a young man he had been led astray by older men, etc., there was no error in permitting the State on cross-examination to show that defendant knew the character of the men when he joined them, and to go into the details of this matter to show that there were no extenuating circumstances.

### 11.—Same—Credibility of Witness—Cross-Examination.

Where defendant himself brought into the case the fact that he was an ex-convict, etc., and claimed extenuation, etc., the State, in cross-examination,

developed the fact that defendant had committed another felony of which he had never been prosecuted, but asked the court that this was done inadvertently and to instruct the jury not to consider this matter, which the court did, there was no error.

### 12.—Same—Charge of Court—Words and Phrases.

Upon trial of murder, there was no error in the court's failure to define the meaning of the words "mitigate, excuse or justify," in his charge on murder in the second degree; there being no requested charge to define these words and besides, they are well understood. Following Barton v. State, 53 Texas Crim. Rep., 443, and other cases.

### 13.—Same—Charge of Court—Manslaughter—Adequate Cause—Pain or Blood shed.

Where, upon trial of murder, the State claimed that defendant acted with express malice and defendant claimed that he acted upon threats and that deceased drew his knife before he shot him, and the court, in his charge on manslaughter, instructed the jury that an assault causing pain or bloodshed, etc., was adequate cause and applied the law to the facts made by the testimony, there was no error.

### 14.—Same—Charge of the Court—Self-Defense—Threats.

Where, upon trial of murder, there was no dispute arising from the evidence that ill-feeling existed between defendant and deceased and the latter had made threats against the former, the criticism that the court's charge on self-defense required the jury to believe that deceased made the threats was without merit, as the jury could not have been misled.

### 15.—Same—Charge of Court—Provoking Difficulty.

Where, upon trial of murder, the State's testimony showed that defendant without provocation approached deceased and struck him over the head with the butt-end of a whip, whereupon, the difficulty ensued in which deceased was killed by defendant, the court correctly charged on provoking the difficulty, although defendant claimed that deceased had attacked him with a knife, the court correctly submitting both theories.

### 16.—Same—Charge of Court—Abandonment of Difficulty—Good Faith—Harmless Error.

Although a charge on abandonment of the difficulty which used the words, "in good faith," was improper, yet, where the evidence showed that the difficulty was a continuing one and there was nothing to mislead the jury to believe that at some future time defendant might renew the difficulty, such a charge was harmless error, and was more favorable to defendant than was necessary.

### 17.—Same—Argument of Counsel.

Where, the remarks of State's counsel were not in themselves improper and no charge was requested to withdraw them, there was no error.

### 18.—Same—Requested Charges—Threats.

Where, upon trial of murder, the defendant requested a charge that if a person makes threats against another on one occasion, even if done with the intention of provoking a difficulty that such threats on another and different occasion would justify one in slaying him before an act is done or word is spoken, there was no error in refusing same.

Appeal from the District Court of DeWitt. Tried below before the Hon. Jno. M. Green.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Proctor, Vandenberge & Crain* and *S. C. Lackey* and *W. T. Bagby,* for appellant.—On question of admitting testimony as to infliction of wound and position of parties by expert witnesses: Hunt v. State, 9 Texas Crim. App., 166; Steagald v. State, 24 id., 207; Tyler v. State, 11 id., 388; Thompson v. State, 30 id., 325.

On question of admitting affidavit of witness to application for change of venue: Shamburger v. State, 24 Texas Crim. App., 433.

On question of permitting cross-examination of defendant as to commission of former crimes: Carter v. State, 23 Texas Crim. App., 508; Crass v. State, 30 id., 480;. Nixon v. State, 31 Texas Crim. Rep., 205; Ware v. State; 36 id., 597; Pace v. State, 58 id., 90; Owen v. State, 58 id., 261; Roquemore v. State, 59 id., 568.

On question of court's charge on murder in the second degree: Swain v. State, 86 S. W. Rep., 335.

On question of court's charge on provoking difficulty and abandonment of difficulty: Thornton v. State, 65 S. W. Rep., 1105; Renow v. State, 49 Texas Crim. Rep., 281; 92 S. W. Rep., 801.

On question of the court's charge on threats: Lundy v. State, 59 Texas Crim. Rep., 131; Mitchell v. State, 50 id., 180; Huddleston v. State, 54 id., 93; Carden v. State, 59 Texas Crim. Rep., 501; 129 S. W. Rep., 362; Askew v. State, 59 Texas Crim. Rep., 152; 127 S. W. Rep., 1037.

On question of court's charge on other offenses: Winn v. State, 113 S. W. Rep., 918; Hunter v. State, 59 Texas Crim. Rep., 439; 129 S. W. Rep., 125; McLain State, 62 Texas Crim. Rep., 118; 136 S. W. Rep., 1057.

On question of court's charge on manslaughter: Barnes v. State, 61 Texas Crim. Rep., 37; 133 S. W. Rep., 887; Blocker v. State, 61 Texas Crim. Rep., 413; 135 S. W. Rep., 130; Huddleston v. State, 54 Texas Crim. Rep., 93; McHenry v. State, 54 Texas Crim. Rep., 477; 114 S. W. Rep., 115; Snowberger v. State, 58 Texas Crim. Rep., 530; 126 S. W. Rep., 878.

On question of argument of counsel: Bogus v. State, 55 Texas Crim. Rep., 126; McKinley v. State, 59 id., 182.

*C. E. Lane,* Assistant Attorney-General, and *Guy Mitchell* and *A. B. Davidson* and *Waldeck & Hartman,* for the State.

HARPER, Judge.—Appellant was indicted, charged with murder, tried and convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

Appellant's first assignments relate to the action of the court in overruling his application for a change of venue. It appears from the record that on the last day of the term at which appellant was tried he presented to the court for approval his bills of exception in regard to the overruling of this plea, and the court on that day endorsed thereon a refusal of same because they were not full and

correct bills, and stated he would prepare and file his own bills, and later the court did make and file bills of exception. Appellant insists we should consider his bills. Read in the light of the bills prepared and filed by the court, it is manifest that the bills prepared and presented by appellant were not complete, and as presented in these bills there is no error in overruling the application for a change of venue.

Appellant is not entitled to have his bills considered, the law pointing out the method for him to pursue in case the court declines to approve a proper bill. When the court rejected the bills on the day presented, on the grounds he did, appellant should have proven them by bystanders, if they were correct, and when he fails to do so, we will consider the bills prepared by the court.

There was no error in permitting witnesses to state what the sheriff said in regard to the result of the election. The witnesses testify that appellant was in fifteen or twenty feet of the sheriff when he made the statement, and the statement was made loud enough for a man to hear it at that distance. The evidence is conflicting as to whether or not defendant knew he had been defeated for constable at the time of the difficulty; the defendant's evidence would present the theory he thought he was elected by a small majority, while the evidence for the State would show that he knew he was defeated—in fact, had so stated himself to a witness—and that he went shortly thereafter to a point where deceased was sitting, and the difficulty resulted. It was a material inquiry as tending to show motive, and all evidence which would tend to show that defendant knew the result would be admissible.

There was no error in admitting in evidence the bullet found in the blood on the ground where the killing occurred. The bullet that killed deceased entered the right breast of deceased between the nipple and collar bone, passed through and made its exit on the left side,—the doctor testified that, if not deflected, it passed through the lungs and near or through the heart. The position of deceased at the time he was shot was a contested issue, and the finding of this bullet at the place it was found would have a strong bearing on this issue. The bullet was shown to be of a size that fit defendant's pistol, and was in a pool of blood that must have come from deceased.

While Wm. Hoffman was on the witness stand, he was permitted to state that he had been arrested by appellant at a given time, charged with theft of cattle. This was objected to by appellant, and if this was all his testimony the objection would be well taken. State's counsel stated this was only for the purpose of fixing time and place, and followed it with proof by the witness that appellant at that time made Hoffman the proposition that "if he would tell on George Thomas (deceased) he (appellant) would turn him loose." Under the record in this case this testimony was decidedly admissible, for the evidence would show that the cause of the trouble between appellant and deceased was occasioned by appellant's insist-

ence on prosecuting deceased for cattle theft, and if he were willing to release another person charged with the same character of offense, if he would give evidence against deceased, it had a tendency to show the state of his mind towards deceased, and who really was in fact responsible for the bad state of feeling between the two men (heretofore friends), and which finally culminated in the death of one of them. The State was further permitted to show that this witness had been summoned by defendant. Taking into consideration the cross-examination of this witness, this presents no error.

Defendant, when he arrived at home, called Dr. Hartman to attend the wound on his face. Appellant's contention was that this wound was inflicted by deceased just prior to the time he shot him. The State's contention was that deceased had no knife in his hand, and did not cut appellant, and that he was not cut at the time he left the scene of the difficulty. Dr. Hartman testified to the nature and character of the wound, and then was asked the question: "If a man were lying on the ground, and that wound inflicted while in that position, and after the infliction of the wound, the man drew a pistol and fired a shot, and then got up and walked ten or fifteen feet and turned and looked back, would the presence of blood have appeared on his face at that time?" To which question the witness answered that it would, and enough would have flowed from this wound for it to have gotten down on his clothing. This testimony was objected to by appellant, and a proper bill reserved. Dr. Hartman had qualified as an expert, and stated he was a graduate of a well-known medical college, explained the wound and the blood vessels necessarily severed, and the knowledge he demonstrated he possessed rendered the testimony admissible.

Defendant filed an application for a continuance, naming a number of witnesses, which was by the court overruled. At the close of the testimony the State proved by the sheriff that the presence of all these witnesses had been secured but one, and the testimony of the wife of this absent witness was introduced to show that he was in such a mental condition, if present, he would not be a competent witness. When the State offered to prove the presence of these witnesses, defendant objected, when the State's counsel stated his only purpose was to prove their presence in answer to the application for a continuance. It was merely shown they were present. This presents no error. If the counsel thought it would injure his client to merely show their presence, if he had requested the retirement of the jury, doubtless the court would have granted the request. Since appellant had filed an application for a continuance, on account of their absence, it was necessary to make it known to the court that they were present; otherwise, in case of conviction, the court might feel compelled to grant a new trial, or this court reverse the case, when in fact no just ground for complaint would exist if it were known that the witnesses attended court, and yet were not called by

appellant. The application for continuance was not introduced before the jury, nor the witnesses called to the stand,—the sheriff was merely permitted to state they were in attendance on court, without stating who had them summoned.

When the witness W. S. Smythe was on the stand and had testified to material facts in behalf of defendant, on cross-examination he was asked if he had not, at the prior term of court, made an affidavit to secure a change of venue for defendant. He at first denied doing so, but subsequently admitted doing so, but denied he knew what was in the application made by appellant. The State was permitted to show that in his affidavit he had stated he had "been fully informed of the contents of and had read the application for a change of venue filed by appellant, and that the facts therein stated were true." This testimony properly went to the interest and bias of the witness, and would aid the jury in passing on his credibility and was so limited by the court in his charge.

There was no error in refusing to permit appellant to state, while on the witness stand, that Mr. Corcoran had told him that he had seen two cattle in Steinemann's brand (and not the brand of deceased) in a certain pasture, it appearing that deceased had sold cattle to the man who placed the cattle in the pasture. In so far as this record discloses, Mr. Corcoran was living and within reach of the process of the court, and if this testimony was desired, he should have been summoned and placed on the stand. The testimony offered was hearsay and inadmissible.

Marcus Morrow, a witness for defendant, had testified in behalf of defendant, and in addition to testifying to threats made by deceased, had testified that deceased, Thomas, had admitted to him that in fact he had stolen the one head of cattle and got him to go and see Joe Bennett; that deceased had told him that Bennett was the only man who could hurt him, and wanted him, witness, to find out if Bennett was going to tell it. The State proved that deceased was not indicted for the offense; that witness Morrow was a member of the grand jury that investigated the case, and had not called the attention of the grand jury to the facts he knew (the alleged confession of deceased), and had not had Bennett summoned before the grand jury. As a person who becomes a member of the grand jury is required to take an oath that he will leave no person "unpresented for love, fear, favor, affection, or hope of reward, but shall present things truly as they come to his knowledge," this testimony was admissible as affecting the credit to be given by the jury to his testimony, and the court so limited it.

While the State was developing its case, on cross-examination, appellant elicited the fact that deceased had used abusive epithets towards him, and said he was an ex-convict. He also introduced witnesses to show that deceased had approached them and requested them not to vote for appellant for the office he was seeking, and had

told such witnesses that appellant was an ex-convict, and some had said appellant was a double ex-convict. Appellant, when he took the stand in his own behalf, testified that he was raised in DeWitt County, and when he was about eighteen years of age he left with three grown men, and went to Harris County, and was subsequently arrested, charged with committing the offenses of theft of a horse, and being concerned in a conspiracy to rob a train. That on advice of friends he had plead guilty to both offenses. He further stated that while in the penitentiary he was granted so much time "for good behavior." It is thus seen that appellant brought into the case the fact he was an ex-convict, and in extenuation claimed while he was a young man he had been led astray by older men, and had made a good prisoner. The State on cross-examination attempted to show that he knew the character of the men when he joined them, and by going into the details, as far as appellant was concerned, to show there were no extenuating circumstances. As appellant brought these offenses, and his conviction of them into the case, and then to soften the effect of such evidence, and to really turn it so that it would create sympathy for him in the minds of the jury, there was no error in the court permitting the State to show the real circumstances by cross-questioning appellant. It is true that when testimony of a former crime is admitted, the circumstances attendant upon it cannot be gone into; that case will not be tried. But when a defendant himself brings it into a case, and seeks to arouse sympathy for himself thereby, then the State will be permitted to show whether or not, under the real facts, he is entitled to such sympathy. He having injected the issue, he cannot object that the State attempts to meet it. However, in this cross-examination, the State developed that appellant had at that time stolen another horse in Lavaca County, and for which he had never been prosecuted. State's counsel at once stated to the court that it had not sought to develop that fact, and the answer was a surprise to them, and they asked the court to instruct the jury not to consider this fact in their deliberations, which request the court promptly complied with, and then in his charge again instructed the jury they could not consider that fact for any purpose. Under these circumstances, we do not think the court erred in permitting this cross-examination of appellant.

This disposes of all the bills of exception, in so far as they relate to the testimony, but a number of exceptions were taken to the charge of the court, and a brief resume of the testimony may render the opinion more intelligible.

In 1908 appellant was elected constable of Cuero precinct, and at that time deceased was a warm supporter. In 1909 appellant's half brother rented land from deceased, and during that year trouble arose between them. A portion of the testimony would indicate that the relations became strained also between appellant and deceased over this matter, but no real bitterness was manifested until later,

when appellant learned some facts that led him to believe that deceased had stolen some cattle from Mr. Steinemann, and when he communicated what he had heard to Mr. Steinemann, the latter swore out a search warrant, and the sheriff, appellant, and Mr. Steinemann went to deceased's pasture and searched it, finding none of Steinemann's cattle in deceased's pasture, but in an adjoining pasture found one head in Steinemann's brand, and which Steinemann claimed; deceased had purchased some cattle from Steinemann on two occasions, and also claimed this animal. Deceased was arrested, charged with theft of this animal. An examining trial was held and deceased discharged. He claimed that appellant did not swear the truth on this trial, and the feeling between the two men became intense. Appellant became a candidate for re-election, and deceased vigorously opposed him, and it is said that during the campaign used abusive epithets, charging him with being an ex-convict, and some witnesses testified that deceased said if appellant was elected it would do him no good, for he would kill him. Appellant, on the other hand, was also active; went to Victoria and voluntarily went before the grand jury in an effort to have deceased indicted; went to Duval County in an attempt to fasten a charge of theft against deceased. In these efforts he failed, but he also at times made remarks about deceased uncomplimentary; on one occasion they met in a saloon, high words ensued, and a personal combat followed. Election day, July 23, 1910, both were on the streets of Cuero, and after the pools closed, both were around the courthouse, but finally deceased took a seat on some steps to a business house in the town with four or five citizens of the town. While seated there appellant approached them; got out of his buggy, and walked up to them with a buggy whip in his hand, he says to talk to his uncle (who was in the crowd) about the election. As he approached, he says deceased raised up with a knife in his hand, when he reversed the whip in his hand and struck deceased twice, when Mr. Pridgen interfered and pushed him back. He says he got loose and struck at deceased again, when deceased clenched him, and he fell with deceased on him, and while in that position deceased inflicted a dangerous wound on him with his knife, when he pulled his pistol and shot him. The State's witnesses would have appellant jumping out of his buggy, advancing rapidly on deceased, who was sitting down with nothing in his hands, striking him twice with the butt-end of the whip, without a word being spoken; that he was then pushed off, when he ran around and got back to deceased, again striking him with the whip; that deceased then got up and started toward appellant, when appellant fell over an obstruction in the street, and deceased fell over him; that appellant raised up on his elbow and fired at deceased while he was on the ground, killing him. Numerous threats are shown, some by both men, and the State's contention is that, learning of his defeat, appellant went direct to deceased, attacked him with

his whip, and when deceased resented, appellant shot and killed him.

The first complaint of the charge is that the court should have defined the meaning of the words "mitigate, excuse or justify" in the charge defining murder of the second degree. These words have a well understood meaning, and in the absence of a request it was not necessary for the court to define them, and this paragraph is drawn in language frequently approved by this court. Barton v. State, 53 Texas Crim. Rep., 443; McGrath v. State, 35 Texas Crim. Rep., 413; Smith v. State, 45 Texas Crim. Rep., 552; Carson v. State, 57 Texas Crim. Rep., 394; Harris v. State, 8 Texas Crim. App., 90.

Appellant also complains of the charge on manslaughter. Every charge must be viewed in the light of the evidence adduced in that case, and while in some of the opinions you find criticisms of a charge which are just and proper under the facts in that case, they would be wholly inapplicable to a different state of facts. What does defendant rely on in this case to raise the issue of manslaughter? The State's evidence would make a case of murder, embracing almost all of the elements of express malice, without excuse or mitigation, at the time of the killing. The appellant says the difficulty occurred as follows: Says he drove over to the place of the difficulty to see his uncle, Mr. Goodson; that he did not know deceased was there; he desired to ask his uncle if he had any returns from the election, and adds: "As I walked around to see Goodson, Thomas was there and he came up with that knife, and from the threats I heard and the abuse I heard, I thought he was going to carry out the threats he made and I hit him with the whip. I hit him to keep him off. I do not know how many licks I struck him—some two or three. He had not risen to any great extent, but was in the act of rising. Then Mr. Pridgen tried to shove me off, and I pulled my pistol out. When Mr. Pridgen turned me loose I put my pistol back and hit at Thomas again with the whip. Some one stepped between us and I started to my buggy, and Thomas ran around to the right and ran into me, and cut at me with a knife, and I jerked back and fell, and Thomas got on me. During the difficulty he cut me in the face after I fell and there were some other cuts on my coat and shirt, and I then shot him." This briefly gives appellant's contention as he tells it. The court instructed the jury:

"By the expression, 'adequate cause,' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.

"The following are deemed adequate causes: (1) An assault and battery by deceased, causing pain or bloodshed. (2) A serious personal conflict in which a great injury is inflicted by the person killed by means of a weapon or by means of great superiority of personal strength, although the person guilty of the homicide were the

aggressor; provided such aggression was not made with intent to bring on a conflict for the purpose of killing.

"Any condition or circumstance which is capable of creating and does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is deemed adequate cause. And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so."

This apparently is applying the law to the facts made by the testimony, and if adequate cause existed in the case it is made by this evidence, and if the jury believed any part of it they would necessarily find under it that deceased did make an assault causing pain and bloodshed, therefore the complaints of this charge would not present material error. Our decisions hold that manslaughter is predicated upon "adequate cause," and unless adequate cause exists the homicide will not be reduced from murder, although committed under the influence of sudden passion, rendering the mind incapable of cool reflection. (McKinney v. State, 8 Texas Crim. App., 626; Hill v. State, 11 Texas Crim. App., 456; Neyland v. State, 13 Texas Crim. App., 536; Clore v. State, 26 Texas Crim. App., 624; Blackwell v. State, 29 Texas Crim. App., 194; Treadway v. State, 65 Texas Crim. Rep., 208; 144 S. W. Rep., 666.)

If when appellant approached deceased he began to arise with the knife in his hand, and appellant thought he was about to carry the threats into execution, this would render appellant justifiable in his conduct. On this issue the court charged the jury:

"If you believe that at the time of the killing, if any, the deceased, by his acts and conduct, or by his acts coupled with his words, if any, reasonably induced the defendant to believe that he was about to attack the defendant with a deadly weapon, or a weapon which would probably cause the defendant's death or some serious bodily injury; or if by the acts of the deceased, or his acts coupled with his words, if any, it reasonably appeared to defendant at the time, from his standpoint, that the deceased was then about to attack him, defendant, with a deadly weapon, or a weapon which would probably cause the defendant's death or some serious bodily injury, and if the same was reasonably calculated to create in the mind of the defendant, and did create in his mind, a reasonable expectation of fear of death or some serious bodily injury, and you further believe that the defendant then and there, moved and actuated by such reasonable expectation or fear of death or serious bodily injury, if any, shot and killed the deceased, then under such circumstances, the same would be in his lawful self-defense, and if you so believe from the evidence you will acquit the defendant; and if the deceased was armed at the time he was killed, and was making such attack on defendant, and if the weapon used by him and in the manner of its use were such as were

reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant.''

The court followed this paragraph with the following charge:

''Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made.

''If you believe from the evidence in this case that the deceased did make such threats against the life of the defendant, and it reasonably appeared to the defendant at the time of the killing, that deceased made such an act or demonstration as reasonably to produce in the mind of defendant a belief that deceased then and there intended to take the life of defendant or do him some serious bodily harm, you will acquit; and if the defendant at the time of the killing did reasonably believe from some act or demonstration then and there made by the deceased, as it reasonably appeared to him, the defendant, judging from his own standpoint that the deceased did then and there intend to kill defendant or to do him some serious bodily harm, then you should acquit the defendant.

''You are instructed that it is not essential to the right of self-defense that real danger should exist. If from the defendant's standpoint taking into consideration all the facts and circumstances surrounding the parties, it reasonably appeared to the defendant that he was in danger of death or serious bodily injury, under the law he had the right to defend against such apparent danger to the same extent as if the danger were real.''

This we think properly presented the case as made by the testimony offered in behalf of the defendant. The criticism that it ''required the jury to believe the threats were made'' is without merit, as this was not a contested issue in the case. No jury could be misled in that respect for the proof was beyond dispute that ill-feeling existed, and deceased had made threats. To justify, however, there must have been manifested at the time, in some way, an intention to carry the threats into execution, or cause defendant to so believe. Threats of themselves alone, will justify no one in slaying a person, nor reduce the offense to manslaughter. If at the time of the fatal difficulty, by his acts or conduct, he leads one to believe that he is about to put the threats into execution and thereby cause the death of the person threatened, or do him some serious bodily injury, the right of self-defense arises, but if the acts and conduct are not such that would reasonably cause one to believe that he was in danger of losing his life or suffering serious bodily injury, yet the acts or conduct at the time were such, taking into consideration the previous acts and conduct of deceased, as to cause a degree of anger,

rage, resentment or terror as to render the mind incapable of cool
reflection, the offense would be only manslaughter. In this case, how-
ever, there were no acts or conduct on the part of deceased, at the
time of the killing, as to cause anger, or enrage defendant, unless it
was the assault, and this was fully covered by the charge of the court.
As before said, if deceased attempted to arise, with the knife described
in the evidence, drawn in a threatening attitude, this would present
the issue of self-defense, and not manslaughter, and the court fully
covered both phases of the case in his charge. If in addition to testi-
fying that deceased attempted to arise, with a knife in his hand,
appellant had also shown that deceased used language, or was guilty
of conduct, that would enrage a man of ordinary temper, his criticism
of the charge might be well taken, but as it is not attempted to be
shown that deceased said a word, or did any other act before the
difficulty began than to attempt to arise with a knife in his hand
(and this is disputed by all the testimony except that of defendant
and his uncle) the criticism of the charges on manslaughter and self-
defense are without merit. In addition to the charges on manslaughter
and on self-defense, the court also instructed the jury the law of
provoking the difficulty in language frequently approved by this
court and in as favorable light as the law authorizes. Article 708
provides if a person provokes a contest with the apparent intention
of killing *or doing serious bodily injury to the deceased,* the offense
does not come within the definition of manslaughter. The State's
evidence would have defendant drive up in front of deceased, get
out of his buggy, reverse ends of his buggy whip, directly walk up
to where deceased was sitting and strike him over the head with the
butt-end of the whip, the lick being so severe as to part the skin of
the scalp, deceased at the time doing or saying nothing. This would
show a manifest intention to do serious bodily injury, if not to kill,
and the court correctly applied the law to the evidence. On the other
hand, defendant denied this state of facts, and said deceased com-
mitted the first overt act, by drawing his knife and raising his arm
in a threatening attitude, and the court also fully charged on this
theory, among other things telling the jury: "But if you do not
find from the evidence and beyond a reasonable doubt the existence
of the facts which would qualify the defendant's perfect right of
self-defense under the law as it is given you in this paragraph of
the charge, you will decide the issue of self-defense in accordance with
the law on that subject contained in paragraph 19 of this charge,
and without reference to the law on the subject of provoking the
difficulty."

All the other criticisms of the charge of the court are equally with-
out merit, unless it be those paragraphs relating to abandonment of
the difficulty. In this paragraph of the charge, the court applies the
law, if defendant "in good faith" abandoned the difficulty. The use
of these words in a charge on abandoning the difficulty has been fre-

quently condemned by this court. See Renow v. State, 49 Texas Crim. Rep., 281, 92 S. W. Rep., 801; Thornton v. State, 65 S. W. Rep., 1105; Wells v. State, 22 S. W. Rep., 969. In these cases it is held erroneous, in that the jury might infer that the defendant intended at some future time to renew the difficulty, if not at that time. In this case there is no evidence and circumstances from which the jury could draw such an inference. If appellant turned to go to his buggy, which he claimed was an abandonment of the difficulty, there was nothing said or done at this time, nor at any time during the difficulty, that could or would probably lead the jury to believe that at some future time he might renew it, so as applicable to the evidence in this case, if error, it would be harmless error. However, we do not believe under the evidence that this issue was raised, and the charge in this respect was more favorable to defendant than he was entitled. The evidence shows one continuous difficulty. As appellant himself states it, when he struck deceased two or three times with his whip, Mr. Pridgen shoved him back; when released, he again renewed the attack, a third person getting between them; he says he then turned to go to his buggy, when deceased ran into him and he stumbled and fell, deceased getting on him, when he shot. The whole transaction taking place in a few seconds of time. The State's evidence would have appellant pointing out deceased, just a few seconds before the difficulty, and saying: "If he was defeated, deceased was the big bellied son of a bitch that done it," and when he learned he was defeated going direct to the place where Thomas was sitting, and before a word was uttered, began an assault on him, which transaction was continuous, except when interrupted by others, until the fatal shooting, the distance from the place of beginning to where deceased lay, not being over fifteen to twenty feet. This question is discussed at length in the case of Roberts v. State, 30 Texas Crim. App., 291, and cases there cited, and the rule laid down is: "But it is a rule, equally well settled and established, that though the defendant may have provoked the conflict, yet if he withdraws from it in good faith and clearly announces his desire for peace, then if he be pursued, his right of self-defense revives. The further rule is, that the conduct of the deceased relied on to sustain such a defense must have been so marked in matter of time, place and circumstances as not only clearly to evince the withdrawal of accused in good faith, but such also as fairly to advise his adversary that his danger had passed, and make his conduct thereafter the pursuit of vengeance rather than measures to repel the original assault."

In this case there was nothing in the acts or conduct of the defendant, nor the circumstances of the case, to apprise the deceased that he had withdrawn from the difficulty; and if the witnesses present are to be given credence, there was nothing said or done to apprise them the difficulty was over insofar as appellant was concerned, consequently the matter complained of in this paragraph of

the court's charge would not present reversible error, yet we would not be understood as giving our sanction to the phrase in the charge that the abandonment must be "in good faith." In a proper case, calling for a charge on abandonment of the difficulty, it is better that these words be not used, although in cases it has been held not to be error. Puryear v. State, 56 Texas Crim. Rep., 240.

In regard to the remarks of counsel for the State excepted to, no charge was requested, and in the absence of a requested charge, it would not present error. (Clayton v. State, 67 Texas Crim. Rep., 311, 149, S. W. Rep., 119, and cases there cited.) However, if a request had been made, we would not feel authorized to hold that the remarks complained of were not legitimate under the evidence.

The two special charges requested were properly refused. It is not the law of this State, that if a person make threats against another on one occasion, even if done with the intention of provoking a difficulty on that occasion, on another and different occasion such threats would justify one in slaying his adversary before an act is done or word spoken on such subsequent occasion.

We have carefully considered all the assignments. This is a voluminous record, but we have carefully read and digested it to understand the various contentions advanced by both the State and defendant, and after doing so upon mature reflection we are of the opinion no such error is presented as should cause a reversal of the case, and it is therefore affirmed.

*Affirmed.*

[Rehearing denied November 27, 1912.—Reporter.]