### W. P. Anderson v. The State.

No. 1851.     Decided June 5, 1912.

Rehearing denied June 28, 1912.

**1.—Assault to Murder—Charge of Court—Insanity.**

Where, upon trial of assault with intent to murder, there was no evidence that prior to the day of the shooting the defendant was insane, and none that subsequent to the day of the shooting he was insane, and the only evidence that his mind was other than normal related to the time just before and after the shooting, in which defendant showed great anger and resentment of a character which could only reduce the offense to aggravated assault, of which he was convicted, there was no error in the court's failure to submit the issue of defendant's insanity. Following Leache v. State, 22 Texas Crim. App., 311.

**2.—Same—Condition of Mind—Passion—Uncontrollable Impluse.**

The law of uncontrollable impulse, superinduced by passion, as a defense to murder has never been recognized in this State, and where there was no evidence that defendant was suffering from temporary unsoundness of mind at the time, occasioned by decease, etc., other than that his intellect was probably clouded by rage and resentment, the court did not err in refusing to submit the issue of insanity as a complete defense, upon trial of assault to murder, and properly submitted the issue of aggravated assault.

**3.—Same—Exhibition of Clothes.**

Where, upon trial of assault to murder, the question of the position of the parties, etc., at the time of the shooting being an issue in the case, there was no error in permitting the prosecuting witness to show to the jury that part of the body where the shot struck him, and introducing in evidence those parts of the undershirt and drawers worn by him at the time of the shooting, showing where the shot punctured them.

**4.—Same—Evidence.**

Where, upon trial of assault to murder, each witness was permitted to state for what purpose defendant stated he wanted the gun when he attempted to borrow it, there was no error.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of aggravated assault; penalty, sixteen months confinement in the county jail.

The opinion states the case.

*Goodson & Goodson,* for appellant.—On question of the court's failure to submit the issue of insanity: Berry v. State, 125 S. W. Rep.,

581; Pettigrew v. State, 12 Texas Crim. Rep., 225; Burkhard v. State, 18 id., 599; Massengale v. State, 6 S. W. Rep., 35.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cited cases in opinion.

HARPER, JUDGE.—Appellant was indicted, charged with assault with intent to murder, and when tried was convicted of an aggravated assault, and his punishment assessed at sixteen months confinement in the county jail.

The evidence would show that appellant and J. I. Gilbert entered into a rental contract for the year 1911, and appellant moved on the farm of Mr. Gilbert. Mr. Gilbert had signed a note of appellant at the bank for $49, and claimed that appellant as a part of the rental contract had agreed to give a mortgage on the first bale of cotton to secure this debt; appellant denied this being a part of the rental contract, and refused to execute the mortgage. It seems from appellant's testimony that differences arose almost from the time that he moved on the Gilbert farm, and culminated when he refused to sign the mortgage, in Gilbert refusing to let him have a team to work the land, and Gilbert requesting him to either sign the mortgage or admit he lied about it, or move off the place. After some time appellant did move off the place, and moved on the farm of Mr. Goode. Goode says that the day before appellant shot Gilbert, that he had a talk with Gilbert, and Gilbert in the conversation had stated that appellant, his wife and son had been lying on him, Gilbert, and he told appellant about it on the day of the difficulty, and when he told appellant about it, and also told him that Gilbert had said also the reason appellant did not get a stand of cotton was because he, appellant, had stolen the seed, when appellant said: "Gear up your horse and go to Wilson with me and I will whip and beat hell out of him." Witness says he told him he could not go, when appellant drove off towards his home. Appellant's wife says when he got home he "looked strange or bothered," and told her not to ask him any questions. He changed his shoes and was very much excited, and looked wild out of his eyes and was nervous. When he left the house he carried his gun with him, and it is in evidence that on the way to Wilson he hid his gun in the brush, and after locating Mr. Gilbert returned and got it, and went at once to the place where Mr. Gilbert was sitting and shot him, remarking at the time, "We'll see who has lied now," or words of similar import. Witnesses for defendant say at this time he was excited, "looked pale and fearful," and was not in his normal condition. The gun was taken away from him, and appellant went to his father's house, and his father says when he got there he talked and looked like a crazy man, and he thought appellant had gone crazy, and from his actions and from his conduct he did not

believe appellant would "appreciate the rightfulness or wrongfulness of an act committed." His father detailed at length the words, acts and conduct of appellant on this occasion, but we do not deem it necessary to repeat it here, but the substance of his testimony is that appellant at that time, right after the shooting, was in an irrational condition, and that it took about an hour to get him under control and in a normal condition.

Appellant insists that this testimony suggests the issue of insanity, and that the court should have submitted that issue to the jury. While there are other grounds in the motion, this is the only one raised in the brief, and appellant's able counsel earnestly insist that it was error not to submit the issue on this evidence. There is no evidence that prior to the day of the shooting the appellant was insane; there is no evidence that subsequent to the day of the shooting appellant was insane. The only evidence in regard to the condition of his mind being other than normal relates to the time when Goode told him what Gilbert had said up to and inclusive of the time that appellant appeared at his father's house subsequent to the shooting, embracing some few hours. That appellant was angry is beyond question; that he was in a reckless frame of mind is perhaps true, and if it could be said that reason was dethroned for the time being by this anger and resentment caused by the wrongful words, acts and conduct of Mr. Gilbert, would the law excuse him in taking the life of Mr. Gilbert? We think not. While, if appellant's testimony is true, he had been wrongfully treated; had been imposed upon, and the conduct of Mr. Gilbert was such as to arouse the angry passions of almost any man, yet the law does not excuse one killing or attempting to kill under such circumstances, but only reduces the grade of the offense, and in this case the jury reduce the grade of offense as low as the law permits. This question is so fully discussed and authorities collated in the case of Leache v. State, 22 Texas Crim. App., 311, we do not deem it necessary to reiterate them here. The learned trial judge in approving the bill qualifies and approves it in the following language:

"That the evidence of John Anderson, defendant's father, shows that the defendant was in a fit of uncontrollable anger when at his house on the day of and shortly after the assault upon Gilbert, but there is an entire absence of evidence to show that this condition was produced by any disease of mind or body; my conception of the law is, and was that, 'uncontrollable passion is not insanity, and that one whose power of will is not impaired by disease and who yielding to passion assaults another is subject to the punishment of the law.'

"A careful study of John Anderson's evidence, to which I here refer in my judgment shows that defendant's mind was at the time in question in that condition and state which is almost if not quite 'the synonym of that highest evidence of murderous intent known to

the common law, a heart totally depraved and fatally bent on mischief.'

"The defendant was able with tolerable certainty to detail the events which led up to the assault on Gilbert in a coherent way, after the reception by him from Goode of the information which he claimed so angered and enraged him; he remembers going to his house and changing his shoes before going to the little town; he recalls where he found his gun and cartridges; he could state accurately the route he traveled to the town; he remembers hiding his gun in the brush while he went up to Wilson to locate his victim, and on finding him seated near the rear end of a storehouse talking to friends, the defendant returned to his gun and secured it and went and shot Gilbert, and he details the minutia of the assault fully, as well as other witnesses who saw it were able to do; he does not seem to have gone to pieces until he got to his father's house after the assault.

"As I have read our decisions, the only concession that our law makes to human frailty, when life is taken or attempted by one who is lashed into a fury with passion arising upon a cause deemed adequate in law is to reduce the crime to manslaughter if death is inflicted; if death does not result the offense is reduced from an assault with intent to murder to an aggravated assault. To extend the doctrine of manslaughter or aggravated assault to the point of requiring trial courts to submit to juries the issue of whether or not the defendant was so angry that he was insane when he slays or attempts to kill is to impliedly approve the verdict, if the jury acquits. It occurs to me that such a course would overthrow and render obsolete our law of manslaughter, and would enable defendants to completely justify their acts by a state of facts, which our law-makers have said only mitigates their crimes.

"I make this explanation at length not in disparagement of the able counsel, who have raised the question here, because I recognize their great skill and learning and their well known ability as lawyers, but because of the great importance of the question presented, and its far reaching result if the contention of the defendant in this case on this point is sustained by our Court of Criminal Appeals.

"I have been unable to see any evidence of insanity in this case, considering all of the evidence as a whole and in detail, and for that reason, I declined to charge the jury on that subject."

As stated, the law of our State is that where by the wrongful acts and conduct of another, a person's mind is enraged and rendered incapable of cool reflection, and in such condition of mind commits an offense, the degree of offense is lessened but not justified. The law of uncontrollable impulse, superinduced by passion as a defense to murder has never been recognized in this State, and there is no evidence in this record that appellant was suffering from temporary unsoundness of mind at the time occasioned by disease or misfortune, or other act, other than that his intellect was probably clouded by

rage and resentment, and the court did not err in refusing to submit the issue of insanity as a complete defense to the shooting of Mr. Gilbert. The court properly submitted to the jury that if the defendant's mind was inflamed and he was rendered incapable of cool reflection, he would be guilty of no higher grade of offense than aggravated assault. We can not sanction the doctrine that one who, prior to the time and subsequent to the time of committing an act, shows no symptoms of insanity or weakened intellect, can raise the question of insanity as a justification of crime by showing that he was not in a normal state of mind, was angry, looked wild, and acted different than he did ordinarily for the brief period of time necessary to the consummation of the act. Such doctrine would render, virtually, all homicides justifiable, for there are but few instances where one slays another while his mind is in normal condition. The evidence of defendant would show a deliberate and wilful assault with a deadly weapon, executed while angered by the acts and conduct of the person he shot, and the passion being occasioned by what the law says is "adequate cause" to reduce the grade of offense, an insulting remark about his wife, the conviction for aggravated assault will not be disturbed.

Appellant by bills of exception complains of the action of the court in permitting Mr. Gilbert to show to the jury that part of the body where the shots struck him, and to introduce in evidence those parts of the undershirt and drawers worn at the time of the shooting, showing where the shot punctured them. In approving the bills the court states:

"The clothing exhibited to the jury were white and clean, having been laundered since the shooting, and as far as I could see showed only the great number of shot holes therein and no trace or sign of blood appeared at all. I desire further to state that the arm and leg of the defendant showing shot holes or punctures had healed and was well when exhibited to the jury, and showed no blood or sore, and nothing further was discernable by an inspection thereof except the small specks or scars made by the entrance of the shot. I admitted said testimony for the following reasons:

"1st. The State contended the defendant had fired both barrels of his gun at Gilbert, this contention was based on the multitude of shot which struck him, and the evidence that others missed him, some of which hit the house, and on the defendant's statement to another witness right after the shooting that he had fired both barrels of his gun at the same time, but it was his contention and statement on the trial that he had fired only one barrel of his gun at Gilbert.

"2d. The witnesses on the trial of the case differed as to the number of shot holes or punctures they saw on the person of Gilbert after the shooting, all of them stating a less number than Gilbert claimed. I felt that the shot holes themselves in the clothing and on his person

would be the best evidence as to the actual number that had entered there.

"3d. The State contended that Gilbert was sitting down at the time he was shot with his side to the defendant and with his knee and arm where shot entered rather close together, and that he did not know of the defendant's presence on the ground until he was shot, the defendant denied this, but swore that Gilbert saw him and was in the act of rising and turning towards him when he shot him as bearing upon and elucidating the contention of the parties as above stated, I admitted the evidence in question."

As thus qualified, the bills present no error. (Branch's Crim. Law, sec. 436, and authorities cited.)

Bill No. 4 as qualified by the court presents no error, as in the qualification it is stated that each witness was permitted to state for what purpose appellant stated he wanted the gun when he attempted to borrow it. As to the other matters, appellant seems to have been permitted to testify fully in regard thereto when on the stand.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 28, 1912.—Reporter.]