## J. B. WITTY v. THE STATE.

### No. 3260. Decided November 4, 1914.

### Rehearing denied December 9, 1914.

1.—Murder—Sufficiency of the Evidence—Insanity.

Where, upon trial of murder, the defendant interposed a plea of insanity as his only defense, and the evidence showed beyond a reasonable doubt that the defendant was sane at the time he killed the deceased, although there was much evidence to the contrary, a conviction of murder in the second degree was sustained.

2.—Same—Charge of Court—Charge Considered as a Whole.

It is elementary that in considering attacks upon the charge of the court and his refusal to give requested charges, the whole charge of the court must be considered and not separate and distinct paragraphs of it alone.

3.—Same—Charge of Court—Extenuation—Insanity—Murder in Second Degree.

Where one paragraph of the court's charge was attacked because it did not state what facts or circumstances extenuated the homicide, and failed to state the elements of murder in the second degree and wholly ignored the issue of insanity as a part of the definition of second degree murder, and charged that malice was implied from the fact of an unlawful killing, but the record showed on appeal that when the different paragraphs of the court's charge were considered as a whole, the same correctly applied the law, there was no reversible error. Following Christian v. State, 71 Texas Crim. Rep., 566.

4.—Same—Charge of Court—Insanity—Right of the State—Burden.

Where, upon trial of murder, the defendant interposed a plea of insanity, and the theory of the State was that the defendant was sane when he killed the deceased, the State had a right to have that theory submitted to the jury for

a finding, and where the court's charge was in all respects proper and required the jury that they could not convict defendant unless they believed he was sane at the time of the killing beyond a reasonable doubt, there was no reversible error; the burden in the instant case being on the State. Following Cooper v. State, 72 Texas Crim. Rep., 250.

**5.—Same—Charge of Court—Insanity—Burden—Former Decree.**

Where, upon trial of. murder, defendant's sole plea of defense was insanity, and the presumption was raised by a former decree that defendant was insane at the time he shot and killed the deceased, and the court instructed the jury that the burden of proof was on the State to show by the evidence beyond a reasonable doubt that defendant was sane at the time he killed deceased, and the court's charge, considered as a whole, was a most admirable presentation of the law applicable to the facts in the case, and he submitted besides the requested charges of the defendant, which together with the main charge made it a charge really in favor of defendant, and he was convicted of murder in the second degree upon sufficient evidence that he was sane at the time of the killing, there was no reversible error. Following Hunt v. State, 33 Texas Crim. Rep., 352, and other cases.

**6.—Same—Evidence—Other Transactions—Insanity.**

Where, upon trial of murder, the defendant interposed a plea of insanity and introduced evidence thereunder attempting to show that he was insane at the time of the killing, there was no error in permitting the State to attempt to show that defendant was sane at the time of the killing and introduce testimony of his former acts and conduct, including prior assaults and batteries upon different parties and that he harbored lewd women, and that his acts in connection therewith showed that he was not insane; this testimony being properly limited to the issue of insanity.

**7.—Same—Rule Stated—Common Law Insanity.**

The common law rule of evidence in respect to the proof of insanity shall be observed in all trials where the question is in issue, under article 40, Penal Code, and any and all conduct of the person claiming insanity is admissible in evidence.

**8.—Same—Evidence—Insanity—Facts and Circumstances—Case Stated.**

Where defendant was indicted and tried for murder, and pleaded insanity, and introduced witnesses who testified to many facts and circumstances of what he did and said from the time he was born up to the killing, including the mental and physical condition of his parents and his collateral kin, and claimed that he was acting under the insane delusion that the deceased had immediate designs upon his life, etc., there was no error in permitting the State to show that he was not insane at the time of the killing, but sane, and to introduce testimony of his acts and deeds for several years prior to the homicide and up to the same, said testimony being properly limited to the issue of insanity.

**9.—Same—Evidence—Reference to Former Conviction.**

Where, upon trial of murder, the State's counsel in his examination of a witness inferentially referred to defendant's former conviction, which was immediately withdrawn from the jury by the court, etc., and in the court's main charge thereafter, there was no reversible error. Following Baines v. State, 43 Texas Crim. Rep., 490, and other cases.

**10.—Same—Manslaughter—Insane Delusions—Adequate Cause—Charge of Court—Waiver.**

Where, upon trial of murder, defendant pleaded insanity and submitted requested charges on that issue, to the effect that if defendant's mental condition was such that he did not know the character of his acts, etc., that he should be acquitted, he thereby cut himself off of a charge on manslaughter,

even if he had been entitled thereto; besides, the contention that any insane delusions entertained by the defendant that deceased designed to kill him, etc., would not constitute adequate cause.

**11.—Same—Manslaughter—Charge of Court—Insanity.**

Where, upon trial of murder, defendant pleaded insanity, which the court submitted in his main charge and by defendant's requested charges, and the evidence did not raise adequate cause or any of the elements of manslaughter, there was no error in the court's failure to charge thereon. Following Treadway v. State, 65 Texas Crim. Rep., 208, and other cases.

**12.—Same—Insane Delusions—Manslaughter—Charge of Court—Insanity.**

Where, upon trial of murder and a conviction of murder in the second degree, the defendant pleaded insanity, which the court properly submitted in his main and requested charges, the contention that the court below should have submitted manslaughter on the issue of insane delusions entertained by the defendant of designs of deceased upon his life is untenable and not the law.

**13.—Same—Insanity—Rule Stated—No Degrees of Insanity.**

There is no grade of insanity, and a party can not be half sane and half insane; he is either sane or insane, and insanity never operates as mitigation of a homicide, as it goes only to the punishment and not to the character of the act itself; its only effect is to exempt the slayer from the punishment prescribed for the homicide, without exonerating him from the charge of committing it.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Edgar Harold* and *Williams & Williams,* for appellant.—On question of court's charge on murder in the second degree: Miles v. State, 18 Texas Crim. App., 156; Roberts v. State, 156 S. W. Rep., 651.

On question of insane delusions in connection with the charge on manslaughter: Merritt v. State, 39 Texas Crim. Rep., 70.

On question of the court's charge on insanity: Witty v. State, 69 Texas Crim. Rep., 125, 153 S. W. Rep., 1146; Merritt v. State, 40 Texas Crim. Rep., 359; Tubb v. State, 55 id., 609; Erwin v. State, 10 Texas Crim. App., 700; Looney v. State, 10 id., 520.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of murder in the second degree and his punishment assessed at fifteen years confinement in the penitentiary.

This is the second appeal. The decision in the first is reported in 69 Texas Crim. Rep., 125, 153 S. W. Rep., 1146.

The crime, if committed, was at the time when our murder statute fixing two degrees was in effect and the case was tried thereunder. No extended statement of the evidence is necessary. The statement of facts comprises more than 200 typewritten pages. Appellant killed

the deceased. No question is made of this. He plead not guilty. His sole defense was insanity. His attorney made a clear and forcible oral argument when the case was submitted. He also has an able written brief clearly presenting and forcibly urging what he claims were reversible errors in the trial.

His first contention is that the evidence was insufficient to sustain the verdict in that it failed to establish beyond a reasonable doubt his sanity at the time he killed deceased.

In addition to hearing said oral argument and reading and studying his brief, we have carefully read and studied the whole of the evidence. As stated above, it is unnecessary and altogether too lengthy to recite it. We think it is amply sufficient to sustain the verdict and that the jury and lower court were justified therefrom in believing as they did, beyond a reasonable doubt, that appellant was sane at the time he killed the deceased, and we are not authorized to set aside the verdict and judgment on this ground.

Appellant attacks the charge of the court in some particulars. He also requested several special charges. Some of them were given, others refused. It is elementary that in considering such matters the whole charge must be considered and not separate and distinct paragraphs of it alone. Therefore, in view of said attacks made and the special charges requested which were refused, we here give the charge of the court in full and also copy those of his special charges which were given.

The court's charge is: After the proper heading and the statement to the jury that appellant was charged with murder in the second degree by the unlawful killing of Lula Ozment, and the place and date, and that he plead not guilty, we copy:

"I instruct you that our statute provides that any person of sound memory and discretion who shall unlawfully kill any reasonable creature in being, within this State, with malice aforethought, shall be deemed guilty of murder, and murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the homicide.

"2. The distinguishing characteristic of murder in the second degree is implied malice aforethought. Malice aforethought includes all other states of mind under which the killing of a person takes place without any cause which will in law justify, excuse or extenuate the homicide. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken. Malice in its legal sense denotes a wrongful act done intentionally without just cause or excuse.

"3. Malice aforethought is the voluntary and intentional doing of an unlawful act by one of sound memory and discretion with the purpose, means and ability to accomplish the reasonable and probable consequences of the act.

"4. A deadly weapon is one which in the manner used is likely to

produce death or serious bodily harm—and within the meaning of the law, a pistol is a gun.

"5. Malice is a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that in murder in the first degree malice must be proved to the satisfaction of the jury beyond a reasonable doubt as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"6. Implied malice is that which the law infers from or imputes to certain acts however suddenly done. Thus when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree. And the law does not further define murder in the second degree than if a killing is shown to be unlawful, and there is nothing in evidence on the one hand showing express malice, or which tends to establish any justification, excuse or mitigation on the other, then the law implies malice, and the homicide is murder in the second degree.

"7. Now if you believe from the evidence beyond a reasonable doubt that the defendant, with a deadly weapon, and that the same was a gun, and an instrument reasonably calculated and likely to produce death by the mode and manner of its use, in sudden passion, and that he was sane at the time, as hereinafter charged, with the intent to kill, did unlawfully and with implied malice aforethought shoot and thereby kill the said Lula Ozment, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the penitentiary for any period that the jury may determine and state in their verdict, provided it be for not less than five years.

"8. The verdict, judgment and record of the County Court of McLennan County, Texas, which have been introduced in evidence before you, finding that the defendant was insane at the time he was tried in said court, establishes the fact that he was insane at the very time he was tried in said court, and raises the presumption that he was insane at the time he shot and killed Mrs. Lula Ozment, if he did shoot and kill her, but whether he was sane or insane at the very time the fatal shots were fired is a question which it is your exclusive province to determine from all the facts and circumstances which are in evidence before you.

"9. You are further instructed that the burden of proof is on the State to show by the evidence beyond a reasonable doubt that the defendant was sane at the time he shot and killed Mrs. Ozment, if he did shoot and kill her, and responsible for his acts. In other words, in ordinary cases when insanity is interposed as a defense for the commission of crime on the part of the defendant, the presumption is that he was sane when the crime was committed, until the contrary is shown, and the burden of proof is on the defendant to show that he was insane;

whereas, in the case before you the presumption is that this defendant was insane at the time he shot and killed Mrs. Lula Ozment, if he did shoot and kill her, and the burden of proof is on the State to show by the evidence beyond a reasonable doubt that the defendant was sane at the time of said shooting.

"10. No act committed in a state of insanity can be punished as an offense. While in ordinary cases every person charged with crime is presumed to be sane, that is, of sound memory and discretion, until the contrary is shown by proof, in this case the defendant is presumed to have been insane at the time he shot and killed Mrs. Lula Ozment, if he did shoot and kill her, and not responsible for his acts, until the contrary is shown by the proof beyond a reasonable doubt. If under the law as herein given you in charge, and the testimony before you, the guilt of the defendant has been established beyond a reasonable doubt, it devolves on the State to establish by the evidence his sanity at the time of committing the act beyond a reasonable doubt, in order to fix his legal responsibility for said act; that is to say, the burden of proof to establish the sanity of the defendant by the evidence beyond a reasonable doubt devolves upon the State at the time of the shooting, if any. If the State has, as before explained, proved the facts which constitute the offense charged in the bill of indictment, by the evidence beyond a reasonable doubt, your next inquiry will be, has the State established by proof his sanity beyond a reasonable doubt at the time he shot and killed Mrs. Lula Ozment, if he did shoot and kill her, or has it been established by proof from any source in evidence before you beyond a reasonable doubt. If it has, the law does not excuse him from criminal liability, and you should convict him. The question of the insanity of the defendant has exclusive reference to the act with which he is charged and the time of the commission of the same. If he was sane at the time of the commission of the crime, if any, he is amenable to law. As to his mental condition at the time with reference to the crime charged it is peculiarly a question of fact to be decided by you from all the evidence in the case before the act, at the time and after. A safe and reasonable test in all cases would be, that whenever it should appear from the evidence that at the time of doing the act the defendant was not of sound mind, but was affected with insanity, and that such affection was the efficient cause of the act, and that he would not have committed the act but for that affection, he ought to be acquitted. For in such case the reason would be at the time dethroned, and the power to exercise judgment would be wanting. But this unsoundness of mind or affection of insanity must be of such a degree as to create an uncontrollable impulse to do the act charged by overriding the reason and judgment and obliterating the sense of right and wrong, depriving the accused of the power of choosing between right and wrong as to the particular act done.

"11a. Whether the insanity be general or partial, whether continuous or periodical, the degree of it must have been sufficiently great to have controlled the will of the accused and to have taken from him

the freedom of moral action, at the time of the commission of the act. Where reason ceases to have dominion over mind proven to be diseased it then reaches the degree of insanity where criminal responsibility ceases and accountability to the law, for the purpose of punishment, no longer exists.

"b. Whether that degree of insanity existed in the defendant at the time of the alleged crime, is the important question on this issue. If it is true that the defendant took the life of the deceased, and at the time the mental and physical faculties were beyond the control of the defendant, or if some controlling mental or physical disease was in truth the acting power within him, which he could not resist, and he was impelled without intent, reason, or purpose, he would not be accountable to the law. If, on the other hand, his mind was sufficiently sound to be capable of reasoning and knowing the act he was committing to be unlawful and wrong, and knowing the consequences of the act, and had the mental power to resist and refrain from its commission, his plea of insanity would not avail him as a defense.

"c. It is an essential ingredient of murder in the second degree that the person to be guilty of that crime must be one of 'sound mind and discretion'; the meaning of which is, that he must have capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he is then doing. Although a man may be laboring under partial insanity, if he still understands the nature and character of his act, and the consequences; if he has a knowledge that it is wrong and criminal, and mind sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for his criminal act. But if the mind was in a diseased and unsound state, to such a degree that for the time being it overwhelms the reason, conscience and judgment, and the defendant in committing the crime acted from an irresistible and uncontrollable impulse, then it would be the act of the body, without the concurrence of the mind. In such case there would be wanting the necessary ingredient of every crime; the intent and purpose to commit it.

"d. It is necessary that the sanity of the defendant at the time of the killing, if any, should be established by the State, by the evidence, beyond a reasonable doubt; it is sufficient if it be established to your satisfaction, beyond a reasonable doubt by the weight or preponderance of evidence; that is, such and so much proof as reasonably satisfies you of the existence of the sanity of the defendant, at the time the act was committed, beyond a reasonable doubt. To ascertain the condition of the defendant's mind at the time of the killing, you should look to its condition before that time; his conduct, acts, and all other surroundings; ascertain, if possible, whether his mental condition was such as to enable him to know he was doing a wrongful and unlawful act. Look to his acts, conduct and movements before and on the occasion of the crime, if any, his conduct, acts and movements after the crime,

if any, and all other facts in the case, to reach a correct conclusion as to whether the defendant was of sound mind or not.

"e.   In case the jury find from the evidence that the defendant committed the act with which he is charged, but at the time of the commission of the act he was in a condition of mental insanity, as above defined, you will say by your verdict: 'We, the jury, acquit the defendant on the ground of insanity.'

"12.   The failure of the defendant to take the stand as a witness and testify in his own behalf shall not be taken by you as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the case or by you in your retirement while deliberating on your verdict.   Such failure on his part to testify shall not be alluded to, commented on or considered by you for any purpose whatever.

"13.   All of the testimony, if any, of the various witnesses in this case prior to the date of the alleged killing introduced in evidence before you by the State as to the various fights and assaults, if any, by the defendant, and his association and connection, if any, and the mode or manner of his life, if any, and all testimony, if any, as to whether he drank or was in the habit of drinking intoxicating liquors or not, and all testimony introduced by the State as to the conduct, actions and demeanor of the defendant after he was placed under arrest, and after he was confined in jail, and all testimony as to whether he was high tempered or not, are before you, and you are instructed that if you consider said testimony or any of it at all for any purpose, it is before you for the purpose of aiding you to pass on and determine the question of the sanity or insanity of the defendant at the time of the alleged killing, and is limited to that purpose, and you can consider the same for no other purpose whatever.

"14.   During the trial of this case it has developed that the defendant has heretofore been tried in this court on this same charge.   You are instructed that the result of said former trial or trials, if any, is no concern of yours, and you must not when you retire to deliberate on your verdict refer to the same or inquire into it, mention or consider the same.   Your province is to try this case according to the evidence which has been submitted to you under the rulings of the court, and the law applicable thereto, as given you in charge by the court.

"15.   You are further charged that in the event you convict the defendant it is not permissible for you under any circumstances in fixing the penalty to decide the same by lot.   It sometimes happens that when juries are unable to agree as to the punishment to be inflicted they decide that each man shall set down the number of years in his judgment the punishment should be, all of which to be added together, and the sum total to be divided by twelve, and the quotient so ascertained by that division to constitute the verdict of the jury.   This conduct is deciding the case by lot, and is not permissible, and you are instructed in this case that if you convict the defendant you must not consider any propositions of this character, but the punishment, if any, to be assessed, must be determined and agreed upon by each juror on

the facts of the case as·testified to by the witnesses and the law as given you in charge by the court, and nothing else.

"16. In all criminal cases the burden of proof is on the State. The defendant is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt; and in case you have reasonable doubt as to the defendant's guilt you will acquit him, and say by your verdict, 'Not guilty.'

"You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony, but you are bound to receive the law from the court, which is herein given you, and in the special charges and be governed thereby."

The special charges requested by appellant which the court gave are:

Special charge 3: "You are charged that in this case the burden is on the State to prove, beyond a reasonable doubt, that the defendant was at the very time he committed the act charged (if he did so) sufficiently sane and free from mental diseases and delusions as to render him amenable to the law. As to what mental diseases or conditions are necessary to exist to make him amenable to the law, you will look to and be governed by the general and special charges given in this case."

Special charge 9: "You are further instructed that the burden of proof is on the State to prove by a preponderance of evidence and beyond a reasonable doubt that at the time of said act the defendant's mental condition was such that he did know the character of his act, and its consequences and had sufficient will power to refrain therefrom, and if it has failed to do so, you will return a verdict of not guilty."

Special charge 11: "If the defendant entertained the insane delusion that the deceased had an immediate design upon his life, or the life of his mother or brother, and acting under any such delusion killed the deceased, in the belief that it was necessary to save his own life, or the life of his mother or brother, he would not be guilty under the law, and in this case, unless the State has shown by evidence beyond a reasonable doubt that he did not entertain any such insane delusion at the time he killed the deceased (if he did kill her), you will find the defendant not guilty."

The first attack on the court's charge is of paragraphs 2, 5, and 6. His attack of paragraph 2, in effect, is that that paragraph does not state to the jury what facts or circumstances extenuate the homicide nor is the same elsewhere stated in the charge, nor does it state the elements of murder in the second degree, and it wholly ignores the issue of insanity as a part of the definition of second degree murder. His attack of paragraph 5 is specially to that part of it which tells the jury, "In murder in the second degree malice will be implied from the fact of an unlawful killing," which he claims is not only erroneous when the defense is insanity, but is also erroneous as a general statement of the law. And his objections to paragraph 6 are substantially the same.

None of appellant's exceptions are tenable. It is elementary as

stated, that when objections are made to specific portions or paragraphs of the court's charge it is necessary to consider the whole. No charge in a murder case can be given in one separate paragraph. It is necessary and proper to give it in many. (Christian v. State, 71 Texas Crim. Rep., 566, 161 S. W. Rep., 101 et seq., and authorities there cited.) It is also elementary that the State has a right to a submission of the issues raised applicable to the evidence in its behalf, as well as the accused has such right in his behalf. The theory of the State in this case was, and a large mass of testimony was introduced tending to show it, that the appellant was sane and not insane when he killed the deceased, and the State had a right to have that issue on the State's theory submitted to the jury for a finding. The court, in different paragraphs of his charge which will be readily seen by reading it, made the proper distinction both in behalf of the State and of the appellant along all of these lines. In the second paragraph of the court's charge it was wholly unnecessary to state what facts or circumstances extenuated or excused the homicide. It is a standard form of charge universally approved in murder trials when implied malice and murder in the second degree are raised. In the other portions of the charge the court elaborately, specifically and repeatedly tells the jury, in effect, that they could not convict appellant if he was insane at the time he killed the deceased, but before they could convict they must believe beyond a reasonable doubt that he was then sane. The only justification, excuse or extenuation for the killing, claimed or raised by the evidence, was insanity, and that was completely, as stated, charged, taking the charge as a whole. What we have said about paragraph 2 equally applies to numbers 5 and 6. These paragraphs are unquestionably correct and have been held so uniformly by the Supreme Court when it had criminal jurisdiction and by this court down to the present time. We have had occasion recently to investigate this matter and have so held, citing and collating some of the authorities. See Cooper v. State, 72 Texas Crim. Rep., 250, 161 S. W. Rep., 1094.

Appellant's criticism of paragraph 8 of the court's charge is without any merit. So far as that particular paragraph is concerned it as completely and literally followed the decision of this court on the former appeal of this case as it could well do. However, that paragraph, in considering the criticism, must be considered in connection with all of the other charges of the court on the subject, and when this is done, we think, no just criticism can be made of it. The same may be said of appellant's objections to a part of paragraph 10 and minor paragraphs (b) and (c) of paragraph 11 of the court's charge, and also paragraph 13. In connection with the court's charge must also be considered the three special charges which appellant asked and the court gave. If there was any omission, or what could be considered just criticism of any paragraph of the court's charge as to the question of sanity or insanity, it was fully met and covered by said special charges requested by appellant and given by the court. It may be that the State might

complain of the charge in some particulars, but certainly appellant can not with any show of reason.

Taken as a whole we think the charge of the learned trial judge, together with the special charges given, is apt in every particular, covers and protects appellant's rights in every possible way raised by the evidence and justified by the law of this case. None of appellant's criticisms of it are tenable and none of his special refused charges should have been given. We have deemed it unnecessary to take up these several matters and discuss them separately.

The court's charge, as a whole and especially taken in connection with the special charges requested by appellant which were given, is a most admirable presentation of the law of this case applicable to the facts in appellant's favor. It seems to have been prepared with great care and accuracy. It is in conformity with the many charges and a combination thereof expressly and repeatedly and uniformly approved by this court. We refer to some of these cases without discussing and applying them to the charge in this case. A mere reading of them, and of the court's charge, demonstrates the accuracy and correctness of the court's charge. Hunt v. State, 33 Texas Crim. Rep., 252; Jordan v. State, 64 Texas Crim. Rep., 187, 141 S. W. Rep., 786; Canon v. State, 41 Texas Crim. Rep., 467; Thomas v. State, 55 Texas Crim. Rep., 293; Lowe v. State, 44 Texas Crim. Rep., 224; Harrison v. State, 44 Texas Crim. Rep., 164; Nelson v. State, 43 Texas Crim. Rep., 553; Hurst v. State, 40 Texas Crim. Rep., 378; Brice v. State, 162 S. W. Rep., 874; Anderson v. State, 67 Texas Crim. Rep., 320, 148 S. W. Rep., 802; Kirby v. State, 68 Texas Crim. Rep., 63, 150 S. W. Rep., 455; Nugent v. State, 46 Texas Crim. Rep., 67; Sartin v. State, 51 Texas Crim. Rep., 571; Smith v. State, 55 Texas Crim. Rep., 563; Williams v. State, 7 Texas Crim. App., 163; Clark v. State, 8 Texas Crim. App., 350; Tubb v. State, 55 Texas Crim. Rep., 606; Leache v. State, 22 Texas Crim. App., 279; King v. State, 9 Texas Crim. App., 515.

Appellant has two bills to the introduction of certain testimony over his objections. While we do not copy them we state them fully. In one, after the proper heading, it states that the State offered its witnesses Y. P. Garrett, A. D. Starling and Fred Dean, and by each of them proved that some two or three years prior to the homicide appellant had committed an unprovoked assault on each of them at different times and places; and, in addition, Garrett said that he was sick at the time the assault and battery was committed on him; and Dean that appellant had knocked him down in a restaurant and struck him in the face with a ketchup bottle and sugar bowl, while he was down, inflicting very serious injury on him; and Starling, that appellant had knocked him down, stamped him in the face and broke his jaw. Appellant's grounds of objection were that said matters were remote, prejudicial and injecting into the case other offenses than the one upon which he was upon trial, was not material to any issue and threw no light upon the question of whether he was sane or insane at the time

of the homicide. The bill further shows that the court, in passing upon this testimony, and admitting it, and in his charge, instructed the jury that they could consider the same only upon the issue of insanity. This is the whole of this bill.

The other bill, after the proper heading, states that the State introduced its witness Alva Hatch and he was permitted to testify over his objections that he was a police officer in Waco in 1910-1911, and as such visited appellant's bedroom on Franklin Street just a short time before the homicide and found three lewd women there; that he went to appellant and told him the man who occupied the store under his room was complaining about him having these lewd women up there; that appellant admitted having the women up there and promised to get them out that night which, so far as the witness knew, he did. Appellant's objections to this evidence was that it tended to show him guilty of other offenses than the one for which he was upon trial and to degrade him before the jury, and to show that he was guilty of grossly immoral conduct, and was prejudicial to him, not material to any issue, and threw no light upon the issue of his sanity or insanity at the time of the homicide, or any other time. The bill further shows that the court, in admitting this evidence, limited it to consideration in connection with the issue of insanity and so limited it in his charge to the jury.

In this connection we refer to paragraph 13 of the charge copied above.

Our statute specifically enacts (art. 39, P. C.) that "No act done in a state of insanity can be punished as an offense." And (art. 40, P. C.): "The rules of evidence known to the common law in respect to the proof of insanity shall be observed in all trials where that question is in issue."

We, therefore, go to the text-books for the common law. In the recent very able work on Evidence by Wigmore, volume 1, section 228, page 278, he says:

"Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of normality. The mode of operation of the mind is ascertainable from the conduct of the person in question, i. e., from the effect produced by his surroundings on his mind when responding by action to those surroundings. Virtually, then, the mind is one, while the surroundings are multifold; and the mode of operation can not be ascertained to be normal or abnormal except by watching the effects through a multifold series of causes. On the one hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent. The first and fundamental rule, then, will be that *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue. 'Upon this I believe that no difference of opinion will be found to exist,' said Mr. Justice Patteson, in a celebrated case, 'as to the principle on which such evidence is admissible.

Every act of the party's life is relevant to the issue.' There can be no escape from this consequence. There is no distinction in kind (whatever there may be in degree) between one or another piece of conduct as evidence to be considered; *some* inference is always possible." Citing authorities. In closing that section, on page 283, he quotes Justice Clifford of the United States Supreme Court, in U. S. v. Holmes, 1 Cliff., 98, 109, as follows:

"One of the suggestions . . . was that the government, in attempting to rebut the testimony offered by the prisoner on this point (of insanity) should have been limited to the explanation or denial of the particular transactions, acts, conduct, and declarations introduced by the prisoner to make out his defense. . . . (It) can not be sustained. Most men in the course of their lives, in times of excitement produced by disease or otherwise, do many strange and peculiar acts, and oftentimes give utterance to eccentric or unusual language; and it is obvious that if a person accused of crime may select and offer in evidence all the dark spots of his life, or every peculiar and unusual act and declaration, and be allowed to exclude all the rest, that many guilty offenders must escape and justice be often defeated, because the means of ascertaining the truth are excluded from the jury. . . . (Whenever the accused has offered his acts, conduct, and declarations, before and after the homicide) the government may offer evidence of other acts, conduct and declarations of the accused within the same period to show that he was sane and to rebut the evidence introduced by the defense." See, also, 2 Greenl. Ev., sec. 371; Webb v. State, 5 Texas Crim. App., 596; Warren v. State, 9 Texas Crim. App., 619; Burwell on Insanity, pp. 245-247; 1 Clevenger Med. Juris. of Ins., pp. 184, 267. We have found no authority to the contrary.

In this connection the record shows that the appellant introduced witnesses who testified to many facts and circumstances of what appellant said and did from the time he was born up to the killing. In addition even, testimony to the mental and physical condition of both his father and his mother at the time of his conception. Also of the insanity of some of his collateral kin, his cousins, even beyond the third degree; that the woman appellant killed was a prostitute and had been continuously for many years; that she had illegitimate children, one 14 or 15 years old at the time of the killing, another some 10 years old then; that for several years before the killing she had, in effect, gotten hold of his younger brother when he was only a good-sized young boy and had lived in adultery with him for years; and that he was about to marry her; that her influence over his young brother was such that he could not induce him to break up the relationship, although he and his whole family had repeatedly and earnestly tried, themselves, and had officers also to do so; that her conduct was such and her spell and influence over his brother such as that it ran him crazy and that he entertained the insane delusion that she had immediate designs upon his life and that of his mother and of his said brother, and that he was thus insane from these causes at the time of the killing. The

State, in order to refute this and to show that he was not insane, but that he was sane at the time he killed the woman, introduced a large number of witnesses and proved the various acts, conversations and conduct of the deceased during the same time, but more particularly these matters for several years just prior to the homicide and up to it, and for some time thereafter. These acts objected to by said bills were introduced along the same line and solely on the question of whether or not appellant was sane or insane at the time he killed the woman, expressly so limited at the time of its introduction and again specifically so by the charge of the court. In our opinion they were properly admitted for the purposes limited and none of appellant's objections thereto were good.

By another bill it is shown that the court stenographer, Hall Etter, was introduced by the State to prove that he had taken and correctly transcribed the testimony of Mrs. V. E. Witty, a witness on the former trial of the case, which he desired to offer for the purpose of impeaching her by contradictory statements, she having been a material witness for appellant on this trial, and held, at the time he was testifying a copy of the statement of facts which the county attorney had secured from the Court of Criminal Appeals, which had been sent up as a statement of facts on a former appeal of this case. After the witness testified to the correctness of her testimony on a former trial, appellant's attorney crossed him and proved that said copy of her testimony was not in the form of question and answers but a narrative statement. Then the county attorney, in an ordinary tone and as a cross-examination of what had been brought out by appellant's counsel, asked the witness: "This is the same copy that was filed in the Court of Criminal Appeals, is it not?" which was in the presence of the jury and heard by them; to which the witness answered, "Yes" before counsel could object; that appellant then did object to the question and answer because it was an improper reference to the fact that defendant had, on a previous trial, been convicted. The court thereupon instructed the jury that they would not consider said question or answer for any purpose, yet appellant took his bill. In this connection we call attention to paragraph 14 of the court's charge above copied. This certainly would not be a sufficient ground to authorize this court to reverse this case. Baines v. State, 43 Texas Crim. Rep., 490; Campbell v. State, 35 Texas Crim. Rep., 160; Brantly v. State, 42 Texas Crim. Rep., 293; Smith v. State, 52 Texas Crim. Rep., 344; Arnwine v. State, 54 Texas Crim. Rep., 213; Morrison v. State, 39 Texas Crim. Rep., 519; Salazar v. State, 55 Texas Crim. Rep., 307; Coffman v. State, 73 Texas Crim. Rep., 295, 165 S. W. Rep., 939. The judgment is affirmed.

*Affirmed.*

ON REHEARING.

December 9, 1914.

PRENDERGAST, PRESIDING JUDGE.—The only question necessary to discuss on rehearing is appellant's claim that the court below should

have submitted manslaughter. In his objections to the court's charge he based this on the testimony specifically of Mrs. Witty, his mother, Mrs. McDonald, his sister, Barron, Huff, Bobinger and Corley, therein saying: "All of whom, in effect, testified to delusions on the part of the defendant that the deceased was seeking to take his mother's life and life of other members of his family, including himself, and there was imminent danger of his doing so; and that his mother was con-stantly complaining to him and asking him to take some action in the matter of the association of deceased with his brother, and that he was in a highly excited frame of mind about the situation during the entire day of the homicide, and his mind was in a condition that he could have been guilty, even though sane, of any higher offense than man-slaughter." In his motion for rehearing on this point he claims: "Our contention being that where insane delusions enter into a case through the evidence, those delusions are in fact realities with the person affected, and may, if sufficient, constitute adequate cause equally so as if the delusions had a real existence,—that under the law the accused is to be charged upon the same basis as if the insane delusions entertained by him existed in fact. And so, if these delusions, taken as a whole, were of such a character as had they in fact existed they would have raised the issue of manslaughter, then manslaughter is in the case and the jury should have been so instructed and told that in passing upon this issue they would consider any insane delusions entertained by the accused as existing realities; and that if under all the facts and cir-cumstances of the case they found adequate cause, etc., they would not find the defendant guilty of a higher offense than manslaughter." And contends: "And so, in this case, the jury, under the general charge of the court, could very readily have decided that though the defendant was not sufficiently insane as to be irresponsible in law for his actions, yet that he did entertain sufficiently insane delusions to partially de-throne his reason and render him incapable of cool reflection, and that these delusions were such that if they were in fact true as he, under the law, had a right to have them regarded in passing on his case, they would in law amount to adequate cause."

We have thus given in full on this point his objection to the omission of the court's charge and his contention on rehearing.

He asked no special charge whatever on manslaughter. He did ask, and the court at his instance gave his special charges Nos. 3, 9, and 11, copied in full in the original opinion herein. By them, and especially by No. 11, he cut himself off from any charge on manslaughter, for even if he had been entitled thereto, for by them he had the court specifically tell the jury in No. 3, that "the burden is on the State to prove beyond a reasonable doubt that the defendant was at the very time he committed the act charged sufficiently sane and free from mental diseases and delusions as to render him amenable to the law," and in No. 9, "The burden of proof is on the State to prove by a preponderance of the evidence and beyond a reasonable doubt, that at the time of said act, the defendant's mental condition was such that he did know the

character of his act, and its consequences, and had sufficient will power to refrain therefrom, and. if it has failed to do so, you will return a verdict of not guilty," and in No. 11:

"If the defendant entertained the insane delusion that the deceased had an immediate design upon his life, or the life of his mother or brother, and acting under any such delusion killed the deceased, in the belief that it was necessary to save his own life, or the life of his mother or brother, he would not be guilty under the law, and in this case, unless the State has shown by evidence beyond a reasonable doubt that he did not entertain any such insane delusion at the time he killed the deceased (if he did kill her), you will find the defendant not guilty."

The court having told the jury under those circumstances to acquit, he should not then have told them to convict him of manslaughter.

But even if appellant had not cut himself off from a charge on manslaughter, the evidence in no way showed nor tended to show "adequate cause." As said by this court through Judge Davidson in Davis v. State, 70 Texas Crim. Rep., 37, 155 S. W. Rep., 546, it is "an uncontroverted proposition that two things are requisite to constitute manslaughter: First, adequate cause; second, existing passion," and as we said in Lamb v. State, 75 Texas Crim. Rep., 75: "Neither of these, without the other, is sufficient to raise manslaughter. And the passion must be caused by what deceased does or says. The statute says (P. C., art. 1128) 'manslaughter' is voluntary homicide committed under the immediate influence of sudden passion, arising from an adequate cause. And, defining 'under the influence of sudden passion' (art. 1129) says, it means: (1) That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation; (2) The act must be directly caused by the passion arising out of the provocation; it is not enough that the mind is merely agitated by passion arising from some other provocation, or provocation given by some other person than the party killed; and then (3) whatever the passion is it must be an emotion of the mind rendering it incapable of cool reflection.

"By 'adequate cause' (art. 1130) is meant such as would commonly produce a degree of such passion or emotion in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Art. 1131 expressly states what are not adequate causes, and the next article expressly states what are. Art. 1137 specifically says, in order to reduce a voluntary homicide to manslaughter, it is necessary, not only that adequate cause existed to produce the state of mind referred to, but also that such state of mind did actually exist at the time of the homicide. . . . McKinney v. State, 8 Texas Crim. App., 626; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 733, and cases therein cited and reviewed; Wilson v. State, 71 Texas Crim. Rep., 399, 160 S. W. Rep., 83, and cases therein cited and reviewed; Kelly v. State, 68 Texas Crim. Rep., 317, 151 S. W. Rep., 317, 151 S. W. Rep., 304; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655, and cases cited and reviewed; Johnson v. State, 67 Texas Crim. Rep..

441, 149 S. W. Rep., 165. In the opinions in these cases just above cited many of the older decisions of this court are cited and discussed. We deem it unnecessary to collate all those and the many others to the same effect. We said in Johnson v. State, supra, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 733:

" 'In Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655, and Kelly v. State, 68 Texas Crim. Rep., 317, 151 S. W. Rep., 304, supra, we have recently had occasion to review the decisions of this State on this question, and it has always been held that if there be no legal "adequate cause" to produce a state of mind, such as anger, rage, sudden resentment, or terror, even if such state of mind does exist, the offense is not manslaughter but murder in the second degree.' " Now as we understand the testimony of said witnesses, Mrs. Witty, Mrs. McDonald, Barron, Huff, Bobinger and Corely, it was directed to prove appellant was insane, and his claimed insane delusions at the time and before he killed deceased, and not to prove adequate cause, nor sudden passion at that time by anything deceased then said or did. We have again reviewed their testimony. It is too lengthy and we think unnecessary to copy herein.

As we understand from appellant's brief and motion for rehearing he contends, in effect, that if appellant was *partially* sane and *partially* insane because of his claimed delusions, or "that the passing from sanity into insanity is as the passing from day to night and that there is no definite point at which you may say that a man is sane or insane," that might constitute adequate cause, and he would therefore not be guilty of murder, but of manslaughter only, and relies on Judge Henderson's opinion in Merritt v. State, 39 Texas Crim. Rep., 70, wherein he cites and quotes 1 Wharton Cr. Law, 71. We think he misapprehends said decision. In that case appellant defended on the ground of insanity, claiming that he, Merritt, killed Brown under the insane delusion that a mob was after him to kill him, and Brown was the leader of that mob. He sought to introduce evidence that Brown was the leader of the mob. The trial court permitted him to prove his delusion that a mob was after him, but refused to let him prove, as a part of his delusion, that said Brown was its leader, restricting the proof to "merely referring to the leader of the mob as a 'certain person.' " Judge Henderson said: "The court (below), however, seems to have concluded that the insane delusion could be proved, and a most important feature omitted therefrom. That is, according to the court's idea, it was entirely competent to prove that appellant was deluded as to a mob in pursuit of his life, but it could not be shown in connection therewith who composed the mob. In the view we take of this question, we fail to see of what avail all the proof offered by appellant concerning the mob in pursuit of his life would be to him, if he was not permitted to show who composed that mob. The very essence of appellant's delusion was that the mob was led on by the deceased, if he, indeed, was not the entire mob, and that under such belief he slew him; yet we have seen from the bills of exception above stated that appellant was denied

this proof. In our opinion this was material error on the part of the court." It is true it was held in that case that "a delusion is a form of insanity." The trial court in this case also expressly so held, and charged specifically at appellant's instance if that was true to find him not guilty. The court in this case admitted all evidence offered by appellant on that subject and excluded none.

This court, in Cannon v. State, 41 Texas Crim. Rep., 467, said: "If appellant at the time he slew deceased was laboring under a delusion, and such delusion deprived him of the capacity to know right from wrong, he was insane. There is no grade of delusion that mitigates crime. In other words, a party can not be half insane. He is either sane or insane. As aptly said: 'Insanity never operates as mitigation of a homicide, as it goes only to the punishment, and not to the character of the act itself; and its only effect is to exempt the slayer from the punishment prescribed for the homicide, without exonerating him from the charge of committing it.' 9 Am. & Eng. Ency. of Law, 615. The rule is stated in United States v. Lee, 54 Am. Rep., 293, as follows: 'That there is no grade of insanity sufficient to acquit of murder, but not of manslaughter; but above and beyond that the prayer is inconsistent with his, is incongruous, and radically vicious. It rests upon the idea there is a grade of insanity not sufficient to acquit the party of the crime of manslaughter, and yet sufficient to acquit him of the crime of murder. The law does not recognize any such discretion as that in the forms of insanity. The rule of law is very plain that, in order that the plea of insanity shall prevail, there must have been that mental condition of the party which disabled him from distinguishing between right and wrong in respect to the act committed.' This is to say, in another way, that a person can not be half insane. Spencer v. State, 69 Md., 28, 13 Atl. Rep., 809; 3 Whitthaus & B. Med. Jur., p. 421."

The motion for rehearing is overruled.

*Overruled.*